(C.D. 2132)

BORDER BROKERAGE CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided November 4, 1959)

*Lawrence & Tuttle* (*Edward N. Glad* and *Barnes, Richardson & Colburn* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Murray Sklaroff* and *Sheila N. Ziff*, trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

DONLON, Judge: The merchandise of this suit is described in the entry papers as frozen ground shrimp shells. These shells (together with salmon eggs, as to which there is no issue) were imported from Canada at Blaine, Wash., on October 30, 1957.

Plaintiff entered the shells as nonenumerated manufactured articles under paragraph 1558 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, and the President's Proclamation (T.D. 52827), effective October 7, 1951, subject to duty at the rate of 10 per centum ad valorem. The collector liquidated the shells as entered.

Plaintiff's protest claim presents two alternatives for classification, neither of them the classification of the entry.

One claim is that these frozen ground shrimp shells should be classified under paragraph 1738, which provides that shells which have not been "sawed, cut, flaked, polished, or otherwise manufactured, or advanced in value from the natural state" shall be on the free list. This claim for duty free entry has not been pressed. Plaintiff's brief cites *J. P. Norris* v. *United States*, 34 Treas. Dec. 615, Abstract 41758, as ground for not pressing that claim. We construe this as an abandonment. That protest claim, having been abandoned, will be dismissed.

The other claim which plaintiff makes, and the one it now urges, is that these frozen ground shrimp shells should be classified as waste, not specially provided for, under paragraph 1555 of the Tariff Act of 1930, as modified by the Torquay protocol, *supra*, T.D. 52739, effective June 6, 1951, subject to duty at the reduced rate of 4 per centum ad valorem.

Plaintiff's case for classification of the shells as not specially provided for waste consists of four photographs (illustrative exhibits 1 to 4), said to be photographs of bags of ground and of unground shells; and the testimony of Mr. Robert V. Moore, who works for his "own firm," R. V. Moore Co., Inc., a processor of animal feeds. The Moore corporation was the ultimate consignee of the imported shells.

Defendant offered no evidence. It cross-examined Mr. Moore.

The facts, as developed in the record before us, are that the Moore corporation uses these shells in making fish food, and that this is the only use for them of which Mr. Moore knew. Until he developed a fish food formula that utilizes shrimp shells, Mr. Moore stated that such shells were usually carted away and dumped.

Describing the processing to which the shells are subjected, Mr. Moore said that they are ground in Canada before shipping, in a ⅝-inch or ½-inch plate. This grinding facilitates packing, reduces bulk, and, consequently, effects a saving in the freight truck rate from Canada to the Moore plant in the State of Washington. The record is not clear as to the freezing process, or the reason for it.

After importation, so Mr. Moore testified, the bags of frozen ground shells are placed in cold storage until the shells are required for use in mixing fish food. The ingredients of the food may vary, but they usually include horsemeat, calves' liver, salmon viscera, spleen, and vitamins, as well as the ground shrimp shells. The shells constitute about 5 per centum of the complete mix. The mix is usually sold as a feed for trout and salmon.

Before the mixing operation, Mr. Moore stated that the imported ground shells are further ground twice, once through a ⅜-inch plate grinder and next through a ⁵⁄₆₄-inch plate grinder. These grindings reduce the shells to particles a "little larger than a pin-head."

Under cross-examination, Mr. Moore stated that shrimp shells are the refuse remaining after shrimp meat is taken away from the shells for human food. The reason for the two post-importation grinding operations is to reduce shells to a size small enough for fish to eat.

On re-direct examination, it was brought out that the preimportation grinding saved nothing with respect to the two post-importation grindings. Fresh unground shells would be easier to process than the imported frozen ground shells are.

It appears that the issue as to whether these shells are waste, as plaintiff claims, or a manufactured article, as defendant contends, turns on the preimportation grinding of the shells. Did that operation, as here described, change what is conceded to have theretofore been waste, into a manufactured article?

The applicable law is clear. To constitute an article "manufactured" it is not necessary that the article be converted into a new and different article, having a distinctive name, character or use different from that of the original article (such would be the requirements to constitute an article a "manufacture"), but only that the article be so processed that it be removed from its crude or primary state, though it remain a variety of the original material. *United States* v. *C. J. Tower & Sons*, 44 C.C.P.A. (Customs) 1, C.A.D. 626. This rule is tempered, however, by the rule that an article will not be classified as "manufactured" by reason of its having been subjected to a manufacturing process designed solely to prepare the article for shipment, even though such preparation incidentally advances the article for its intended use. *Lackawanna*

*Steel Co., et al.* v. *United States,* 10 Ct. Cust. Appls. 93, T.D. 38359. [*Chas. H. Demarest, Inc.,* v. *United States,* 44 C.C.P.A. (Customs) 133, C.A.D. 650, at p. 137.]

The only evidence we have as to the reason why the shells were subjected to grinding before shipment, is that this was done for shipping convenience and to economize on transportation costs. The ground shells could be packed, weight for weight, in smaller space than the shells, unground, would require. They were transported at lower cost.

Defendant, however, argues that the processing operation in the United States required grinding; that the grinding in Canada advanced the shells toward their intended use in the fish food mix; hence, it constituted partial manufacture prior to importation.

The question for us to decide is whether, on the record before us, the preimportation grinding, to which the shells were subjected, is (in the language our appeals court used in the *Demarest* case) "a manufacturing process designed solely to prepare the article for shipment, even though such preparation incidentally advances the article for its intended use."

A similar issue was before us in *C. J. Tower & Sons* v. *United States,* 36 Cust. Ct. 282, C.D. 1787. There, the imported waste product had been ground in Canada prior to shipment. We summarized the essential facts of record in our opinion, as follows:

There was testimony to the effect that the grinding process was for the sole purpose of more convenient and economical transportation by railroad freight and that, for the purposes of making the animal feed for which it was imported, the unground product would actually have been preferable. [P. 283.]

The chief distinction between the *Tower* facts and those now before us is that, having been ground in Canada, the *Tower* waste required no further grinding, but only mixing with other ingredients, in the process of making animal feed; whereas we have here two postimportation grinding processes, as well as mixing with other ingredients, in the process of making fish food. We do not regard this difference as significant. There is evidence that the Canadian grinding did not even incidentally advance the shells for their intended use. Thus, the record before us is clear in the essential conditions that have been laid down by our appeals court.

For plaintiff has shown that the only object of the grinding operation in Canada was for convenience and economy in packing and shipping, that no other purpose was accomplished, and that shells in the unground state would have been preferable for processing here into the end product, fish feed mix. Defendant has not introduced any proofs in rebuttal of the *prima facie* case which plaintiff has made.

As we did in the *Tower* case, we again observe that when competition is between an enumerated classification and one that is nonenumerated, the enumerated classification will ordinarily prevail unless the evidence takes the merchandise out of the enumeration. The evidence here, as in the *Tower* case, does not take these shells out of the enumerated classification.

There is, as we noted above, no evidence as to the purpose of freezing these shells. There is evidence that frozen ground shells were not preferable for the use for which they were imported, to unground fresh shells. It is well settled, after litigation, that freezing does not constitute preparation. *United States* v. *Conkey & Co.*, 12 Ct. Cust. Appls. 552; *Frosted Fruit Products Co.* v. *United States*, 18 Cust. Ct. 119, C.D. 1054. *A fortiori*, freezing is not a process of manufacture. Indeed, defendant does not argue that it was.

The protest claim that these shells should be classified under paragraph 1738 is dismissed. The protest claim that these shells are properly to be classified under paragraph 1555 as waste, not specially provided for, with duty at the modified rate of 4 per centum ad valorem is sustained. Judgment will be entered accordingly.