## WOOLART MILLS, INC.
### v.
### UNITED STATES.
**C.D. 3018;  Protest Nos. 60/16323–15160.**

United States Customs Court,
Second Division.

May 25, 1967.

Siegel, Mandell & Davidson, New York City (David Serko and Allan H. Kamnitz, New York City), for plaintiff.

Carl Eardley, Acting Asst. Atty. Gen. (Mollie Strum, Richard J. Kaplan, and Bernard J. Babb, New York City, trial attorneys), for defendant.

Before RAO, C. J., and FORD, J.

FORD, Judge:

The merchandise the subject of this timely protest is described on the invoices as "Silk noils." It was assessed by the collector of customs at the port of Boston with duty at the rate of 17½ per centum ad valorem under paragraph 1201, Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, 90 Treas.Dec. 234, T. D. 53865, supplemented by Presidential proclamation, 90 Treas.Dec. 280, T.D. 53877, which provides as follows:

Silk partially manufactured, including total or partial degumming other than in the reeling process, from raw silk, waste silk, or cocoons, and silk noils exceeding 2 inches in length; all the foregoing if not twisted or spun.    17½% ad val.

---

Plaintiff contends the imported merchandise has not been manufactured, merely being an unavoidable waste product and, consequently, entitled to free entry as silk waste under paragraph 1762 of the Tariff Act of 1930, which provides as follows:

Silk cocoons and silk waste.

In the alternative, the plaintiff contends the merchandise is waste, not specially provided for, and dutiable at the rate of 4 per centum ad valorem under paragraph 1555 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas.Dec. 121, T.D. 52739, which provides as follows:

Waste, not specially provided for . . . . . . . 4% ad val.

The protest as filed included a claim for free entry under paragraph 1763 of the Tariff Act of 1930, but plaintiff's claim thereunder was abandoned during the trial.

This case had previously been dismissed for failure to prosecute. A subsequent motion to set aside the dismissal therein was granted, and an order restoring the case to the docket was issued.

Evidence in this case consists of testimony of four witnesses and five exhibits introduced by the plaintiff, and one witness and two exhibits in behalf of the defendant.

There is little to be gained, in the circumstances of the present controversy, by expounding at length on the detailed testimony in this case with respect to the creation of spun silk yarn, the pure silk waste obtained therefrom, the waste noils culminating from the various steps in the production of silk noil yarn, and statistical information as to market price of the foregoing.

A sample of the imported merchandise was received in evidence and marked "Plaintiff's Exhibit 2." Customs Examiner John E. Sullivan testified said exhibit fairly represents the importation in question as did one of plaintiff's witnesses.

We shall first consider the question of whether or not the plaintiff has established that the collector's classification of the instant merchandise as silk noils under paragraph 1201, as modified, supra, is erroneous. In order to come within the purview of said paragraph, the silk noils must exceed 2 inches in length.

Mr. Frederick Kloeckener, president of the plaintiff corporation and a silk importer for over 50 years, described plain-

tiff's exhibit 2 as a residue from silk noils and an unavoidable by-product of the spinning of silk noil yarn. He further characterized it as a mixture of waste and noils, specifically exhaust and card noils, card and spinning room waste, a collection of the various types of silk wastes and noils which are the by-products of the spinning of silk noil yarn in a spinning mill.

The witness, in testifying as to whether or not the involved merchandise was a noil, stated it had been collected from various operations, viz, carding, combing, picking, and other spinning room operations, with the exception of garnetting. He defined a noil as follows:

> * * * Anything that is the by-product of a combing or fibre orientation is called a noil. It is always a waste.

This is in keeping with the following definition in Webster's New International Dictionary, 1929:

> noil. A piece or knot of short hair or fiber, as a short or waste piece or knot of wool separated from the longer staple by combing, or a similar piece or shred of waste silk; also, such waste pieces collectively.

Mr. Kloeckener's testimony was corroborated by Mr. George Cohen and Mr. Werner Gotthold Tuerpe, two experienced witnesses from the textile industry who are purchasers of silk waste.

The record is sufficient to establish that the merchandise in issue consists of silk noils under 2 inches in length. Mr. Kloeckener and Mr. Cohen, the only witnesses questioned about the length of the imported merchandise, both testified such merchandise, as represented by exhibit 2, was under 2 inches in length. The fact that the government examiner admitted exhibit 2 was representative of the imported merchandise corroborates this fact. It is, therefore, apparent that the collector's classification of the involved merchandise as silk noils, exceeding 2 inches in length, is erroneous.

The next question to be considered is whether the imported merchandise is silk waste, as the plaintiff contends. It is clear from the record that the imported merchandise is waste from exhausted silk noils. The defendant's sole witness, Mr. Lawrence N. Hale, an equally well-qualified witness, testified that plaintiff's exhibit 2 "is a very dirty mill waste, with a lot of floor sweepings, droppings," and "extremely dirty." His description of the merchandise as "in the general area of low end wastes" parallels Mr. Cohen's testimony that it is "on the very low end as waste," the "waste of wastes." Testimony as to price at which merchandise identical to plaintiff's exhibit 2 has been sold is further indication that it is considered a waste by the silk industry. It appears from the record that degummed silk was selling for approximately $6.50 per pound at the time of exportation and silk noils at $1.75 per pound while the imported silk waste was selling at 98 cents per pound.

Just what constitutes waste has been before the courts on many occasions. In Harley Co. v. United States, 14 Ct.Cust. Appls. 112, T.D. 41644, the appellate court stated as follows:

> In the tariff sense, waste is a term which includes manufactured articles which have become useless for the original purpose for which they were made and fit only for remanufacture into something else. It also includes refuse, surplus, and useless stuff resulting from manufacture or from manufacturing processes and commercially unfit, without remanufacture, for the purposes for which the original material was suitable and from which material such refuse, surplus, or unsought residuum was derived. The latter class of waste might be appropriately designated as new waste and includes such things as tangled spun thread, coal dust, broken or spoiled castings fit only for remanufacture. T.D. 33376; Willits v. United States, 11 Ct.Cust.Appls. 499, 500, 501;

Schlesinger v. Beard, 120 U.S. 264, 7 S.Ct. 546, 30 L.Ed. 656; Seeberger v. Castro, 153 U.S. 32, 14 S.Ct. 766, 38 L.Ed. 624; Patton v. United States, 159 U.S. 500, 505, 509, 16 S.Ct. 89, 40 L.Ed. 233; Latimer v. United States, 223 U.S. 501–503, 32 S.Ct. 242, 56 L. Ed. 526.

■ The basic elements pointed out above are substantially within the scope of the term "waste" as set forth in Webster's New International Dictionary of the English Language (unabridged), 1929, the pertinent portion of which is defined as follows:

waste * * * 6. That which has no original value or no value for the ordinary or main purpose of manufacture; remnants not fit for the use for which the stuff is made or intended; superfluous or rejected matter; refuse. Specif.: a Remnants of cops, etc., from the working of cotton, wool, hemp, and the like, used for wiping machinery, absorbing oil, as in axle boxes of railroad cars, etc. * * *

There appears to be no doubt that, since the silk noils in issue are under 2 inches in length, they are entitled to free entry as silk waste under the enumeration of paragraph 1762, supra, unless, as counsel for the defendant contends in its brief, said merchandise has been subjected to a process which has advanced it to a more desirable state and placed it in a condition close to its ultimate use. The defendant's position is that it then becomes silk partially manufactured from waste silk for tariff purposes. As such, the right to free entry would be lost and the merchandise dutiable at the rate of 17½ per centum ad valorem under paragraph 1201, as modified, supra.

In support of this contention, defendant relies upon the testimony of its sole witness, Mr. Hale, who, upon examining plaintiff's exhibit 2, testified the merchandise had been subjected to a willowing operation similar to a dusting operation.

It appears from the testimony that, after the merchandise is gathered from various floors and other sources, it is dusted prior to being packed for shipment. Dusting is accomplished by blowing air into a large horizontally positioned cylinder, in which dirty stock has been placed. As the container is rotated, the stock is consistently shifted as air currents flow through the stock and move through the openings of the cylinder. Nothing is added to the merchandise or done to it except to blow air through it in an attempt to eliminate the chaff material from the clean fiber.

The record does not disclose whether Mr. Hale had personally witnessed the foregoing operation. The plaintiff's witness, Mr. Kloeckener, on the other hand, had observed the process in Italy. He stated its purpose is to eliminate a certain amount of danger of inflammability and to save shipping costs, pointing out that transportation companies quite often object to the transportation of merchandise without its being dusted and cleaned safely. Mr. Hale referred to the operation as a willowing operation similar to dusting and agreed that it was a cleaning operation. He testified that the merchandise in issue appeared to be blended and, in his opinion, blending would be an operation in the partial manufacture of silk. The witness, however, was not certain whether the blending was intentional or resulted from the willowing operation.

From the record, we find no evidence to establish that the silk noils have been manufactured in whole or in part. The test as to when silk is partially manufactured was considered in Smillie & Co. v. United States, 11 Ct.Cust.Appls. 199, T.D. 38966. In that case, the court held that broken pieces of silk filaments and cocoons, resulting as a waste or by-products of the reeling of the silk from the cocoons, were not to be regarded as silk partially manufactured from waste silk by reason of the fact that they had been cleaned of gum and other impuri-

ties by boiling. In arriving at its determination that such merchandise remained silk waste and, therefore, was entitled to free entry, the appellate court considered a letter of instructions issued by the Treasury Department on December 15, 1911, published as T.D. 32085. The letter dealt primarily with the subject of silk noils and exhausted silk noils. It also covered the classification of silk partially manufactured from silk waste. The court quoted from the letter as follows:

> Silk noils constitute a by-product in the manufacture of spun silk from waste silk or pierced cocoons. The waste silk or cocoons are (1) sorted, (2) boiled, (3) washed by machinery, and (4) hackled. Silk in this condition constitutes "silk partially manufactured from cocoons or from waste silk," and is dutiable at the rate of 35 cents per pound under paragraph 396 of the tariff act.

We quote the following language employed by the court in the *Smillie* case, supra, with respect to the foregoing:

> The foregoing letter of explanation and instruction deserves especial consideration, since soon after its publication Congress enacted the tariff revision of 1913. And in that revision the language of the act of 1909 which was interpreted in the letter was reenacted without change, except that dutiable eo nomine provision for "silk noils exceeding two inches in length" was added thereto, in apparent ratification of the position taken by the department in its letter. We may therefore say that the definition given by the foregoing departmental letter has received in a measure the implied approval of Congress also. It is important to note that according to the letter aforesaid waste silk becomes dutiable under the enumeration of "silk partially manufactured from cocoons or from waste silk" when it has been (1) sorted, (2) boiled, (3) washed by machinery, and (4) hackled. This defi-

nition plainly contemplates a substantial change in the condition of waste silk before it is regarded as advanced to the dutiable enumeration of partially manufactured silk. The hackling of the waste silk as mentioned in the letter, or any partial or preparatory combing or carding of the material, or complete carding and combing, would respond to this requirement. The present material, however, has not been washed by machinery nor hackled, nor partially nor fully carded or combed, nor treated by any process similar or equivalent thereto. The boiling operation described by the witness should not be given the effect of removing the article from the dutiable status of waste silk and advancing it to that of an article partially manufactured therefrom.

■ In view of the record in the case at bar and the rule pronounced in the *Smillie* case, supra, it is our opinion that the dusting or willowing process described in the instant case is not a manufacturing operation which would convert the silk noil waste into partially manufactured silk. Such operation is simply a cleansing treatment, which does not change the character of the merchandise or appropriate it to any new or different use. There is no evidence that the operation improved the condition or increased the value of the merchandise in issue. On the contrary, the testimony of the defendant's own witness clearly indicates that the waste was of quality and value far below that of the so-called primary silk waste.

■ It is a well-established principle in customs law that the mere cleaning of imported merchandise, mechanically or otherwise, is not a manufacturing process, nor does it necessarily advance the merchandise in value. United States v. Solomon, 1 Ct.Cust.Appls. 246, T.D. 31277; United States v. Brown & Co., 10 Ct.Cust.Appls. 47, T.D. 38295; United States v. Stone & Downer, 12 Ct.Cust. Appls. 293, T.D. 40296; Cone & Co.

(Inc.) v. United States, 14 Ct.Cust.Appls. 133, T.D. 41672; United States v. Markaroff et al., 16 Ct.Cust.Appls. 531, T.D. 43263; Passaic Worsted Co. et al. v. United States, 17 CCPA 459, T.D. 43916.

We are of the opinion that the dusting operation in the instant case is designed to remove existing impurities, save shipping costs, and insure safety in transportation, as the plaintiff contends.

■ It is also a well-established rule that an article will not be classified as "manufactured" by reason of its having been subjected to a process designed solely to prepare the article for shipment, even where such preparation incidentally advances the article for its intended use. United States v. C. J. Tower & Sons, 17 CCPA 90, T.D. 43427; C. J. Tower & Sons v. United States, 36 Cust.Ct. 282, C.D. 1787; Border Brokerage Co. v. United States, 43 Cust. Ct. 231, C.D. 2132.

Counsel for the defendant has not supported its contention that the merchandise has become silk partially manufactured within the purview of paragraph 1201, as modified, supra. From the record before this court, we find the plaintiff has established the merchandise to be silk waste.

After careful consideration of the cases cited by the parties, we find nothing therein which would militate against the conclusions herein reached. Upon the record before the court and for the reasons stated above, we find and hold the merchandise in question entitled to free entry as silk waste under paragraph 1762 of the Tariff Act of 1930.

Plaintiff having formally abandoned its claim under paragraph 1763 of the Tariff Act of 1930, it is hereby dismissed.

Judgment will be entered accordingly.

RAO, C. J., concurs.