(C.D. 3877)

PENSON & CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided August 7, 1969)

*Siegel, Mandell & Davidson* (*Allan H. Kamnitz* of counsel) for the plaintiff.
*William D. Ruckelshaus,* Assistant Attorney General (*Bernard J. Babb,* trial attorney), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: The protests listed in schedule "A," annexed hereto and made a part hereof, consolidated for the purpose of trial, contest the classification of certain Japanese silk keba under the provisions of paragraph 1201, Tariff Act of 1930, as silk, partially manufactured. As a consequence of said classification, duty was assessed at the rate of 35 per centum ad valorem.

Plaintiff herein contends the merchandise is properly entitled to entry free of duty under the provisions of paragraph 1762, Tariff Act of 1930, as silk waste. Alternatively, plaintiff contends that if the merchandise is not silk waste it is subject to classification under the provisions of paragraph 1558, Tariff Act of 1930, as unmanufactured articles not enumerated or provided for.

The statutory provisions involving the classification and the claim for entry free of duty are as follows:

Paragraph 1201 of the Tariff Act of 1930:

> Silk partially manufactured, including total or partial degumming other than in the reeling process, from raw silk, waste silk,

or cocoons, and silk noils exceeding two inches in length; all of the foregoing, if not twisted or spun, 35 per centum ad valorem.

Paragraph 1762 of the Tariff Act of 1930:

Silk cocoons and silk waste.

The record herein consists of the testimony of one witness called on behalf of plaintiff and two illustrative exhibits as well as the official papers being received in evidence without being marked. Mr. Tuerpe, who was formerly assistant to the executive vice president of Susquehanna Mills, the actual importer herein, testified that he had been associated with said company from 1929 to 1953. He subsequently was in his own business for 10 years which was also in the textile field. After this period he was associated with Woolart Mills for 5 years and is presently in his own business. While the government was stockpiling silk and silk waste, he was an inspector.

His duties with Susquehanna Mills were the purchase of silk, manufacturing it and delivering the merchandise to the government. The silk purchased was mainly waste which ran into "hundreds of thousands of pounds". He is familiar with a product known as keba such as involved herein. Keba is the portion which the silk worm makes as a web before it prepares the cocoon. The cocoon rests on this web or nest. A representative sample of said product was received in evidence as plaintiff's illustrative exhibit 1. The keba was subjected to a lapping operation to make it more saleable and easier to ship since the rates for shipping are on a cubic foot basis. After it was received in the United States, the merchandise was boiled off, subjected to further lapping, and was garnetted in order for it to be spun. His company then made the cloth for silk powder bags which were sold to the government.

The degumming, garnetting and lapping would result in an end product which amounts approximately to 40 percent of the amount started with.

Mr. Tuerpe never having been to Japan could not state whether the lapping done prior to exportation was the same as done by his company but he indicated that all lapping had to use machines containing a drum and pin heads which whip the fibers to a lengthwise fiber.

At the outset of the trial, plaintiff abandoned entry 365028 of protest 230837-K and entry 360362 of protest 238839-K. These entries are, therefore, dismissed.

There is no question that the involved merchandise is silk. The nub of the problem involved herein is whether the imported keba has been partially manufactured from its condition as waste. The Summaries of Tariff Information, Vol. 16 (1948), confirm to us that the merchandise referred to herein as keba is in fact a waste referred to as

blaze. The information contained in said Summaries describes the merchandise as follows:

> Sericultural waste also includes an inferior, excessively gummy waste called blaze which is the gauzy network of fibers spun by the silk worm as guy lines for the support of its cocoon.

The following comment contained in the Summaries of Tariff Information, Vol. 12 (1948), is pertinent to the issue involved herein:

> Paragraph 1201 covers two classes of material: (1) Silk which has been advanced from the original raw-silk (reeled) condition by degumming, dyeing, or winding from skeins onto spools, cops, tubes, or beams, but which has not been doubled or twisted into thrown yarn; and (2) silk which has been partly manufactured from waste silk by degumming, cleaning, opening, lapping, filling (picking), dressing (combing), or drawing to the stage of sliver, but which has not been attenuated into roving. The materials embraced in the first class are commercially unimportant, as degumming, dyeing, and winding of raw silk are processes generally conducted either by manufacturers or converters in their own plants or on contract in connection with further textile operations of throwing, weaving or knitting, and finishing. Thus, the principal forms of silk imported under the provisions of this paragraph are those partly manufactured from silk waste, such as dressed or combed silk, called peignee, and long noils.

The Summary of Tariff Information (1929) also makes the following statement:

### SILK PARTIALLY MANUFACTURED

> Description and uses.—Paragraph 1201 covers partially manufactured silk or silk and artificial silk, not twisted or spun, that is, not advanced beyond the stage of sliver. It includes silk which has been advanced from the original reeled condition by dyeing, degumming, or winding on cops, spools, tubes or beams, but which has not been doubled or twisted into thrown yarn; it also includes that which has been advanced from the state of waste silk by opening, lapping, filling, dressing, spreading, or drawing, but which has not been twisted into roving.

It is noted that the term "lapping" is used in describing silk waste which has been partially manufactured. Plaintiff's witness testified that in his opinion the imported merchandise had been lapped. It is the contention of plaintiff that the lapping had been done solely for the purpose of transportation and not to advance the merchandise in condition. Ordinarily, a processing solely for the convenience of transport does not advance the condition of a material. *Woolart Mills, Inc.* v. *United States*, 58 Cust. Ct. 450 C.D. 3018, 269 F. Supp. 381

(1967), and cases cited therein. However, in the case at bar the information contained in the Summary of Tariff Information (1929), *supra*, was before Congress at the time of the enactment of the tariff act involved. This was further corroborated in the Summaries of Tariff Information (1948), *supra*. Therefore, Congress in enacting the provision for silk partially manufactured contemplated silk waste which had been, among other things, lapped. With this in mind the court may not disregard the expressed intent to include merchandise such as involved herein.

In addition to the foregoing, the record while admitting lapping, which in itself is sufficient to fall within the classified provision, does not satisfactorily establish just exactly what was done to the imported merchandise prior to exportation. All we have before us is the testimony of a witness, who was never in the country of exportation, to the effect that by examination of the merchandise involved he knew it was lapped. He did not know how it was lapped nor is there any evidence that any other process was or was not performed in addition to the lapping.

It is elementary in this field of jurisprudence that the plaintiff has a twofold burden imposed upon it. First, the classification must be shown to be incorrect and a proper classification must be established. We do not feel the record does overcome the presumption of correctness attaching to the classification.

Plaintiff's alternate claim under the provisions of paragraph 1558, Tariff Act of 1930, is based upon the following statement contained in defendant's brief at page 8.

> * * * If anything, silk keba is an original material from which silk yarns are made, and in the case at bar, the yarns are then woven into fabrics for making silk powder bag cloth. In no way has the silk keba been shown to have been an article no longer useful for its intended use originally or the residue of a manufacturing process.

Plaintiff, therefore, alleges the above is a "concession" and urges its alternative claim under paragraph 1558, Tariff Act of 1930. The above statement was made with respect to whether the imported article was no longer useful for its intended purpose. We merely consider this to be in the form of an *arguendo* discussion and not a concession. In any event in view of our finding on the primary claim, we find the position taken by plaintiff untenable.

Judgment will be entered accordingly.