(C. D. 1384)

G. HIRSCH SONS, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 27, 1951)

*Brooks & Brooks* (*Thomas J. McKenna* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General, for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: This suit was filed by the plaintiff seeking to recover a certain sum of money alleged to have been illegally exacted as customs duties upon an importation of religious emblems. The merchandise was classified as "Rayon ornaments" and duty levied thereon at the rate of 90 per centum ad valorem under paragraph 1529 (a) of the Tariff Act of 1930. Plaintiff claims said merchandise to be properly dutiable at the rate of 45 cents per pound plus 45 per centum ad valorem under paragraph 1308 of the Tariff Act of 1930, as modified by the French Trade Agreement, 69 Treas. Dec. 853, T. D. 48316, as fabrics with fast edges, not exceeding 12 inches in width, wholly or in chief value of rayon or other synthetic textile, not specially provided for.

At the trial, a representative sample of the involved merchandise was admitted in evidence without objection, and it was then agreed between counsel that it was in chief value of rayon, less than 12 inches in width, and that it has fast edges.

The sample admitted in evidence as exhibit 1 is approximately 7 inches square, in the center of which, by use of a different color of thread, have been produced the letters "I. H. S." The letters "I" and "S" are approximately 2½ inches in height, while the letter "H" is approximately 3 inches in height. It also appears that the involved merchandise is imported in running lengths of approximately 50 meters with a line of demarcation in those running lengths between one symbol and the repeat symbol consisting of about one-quarter of an inch of blank weave, which is used as a marker for the cutter.

The president of the plaintiff testified that his company had been engaged in the importation and sale of gold and silver trimmings and fabrics for 62 years; that his company sells the involved merchandise in lengths and also in individual pieces; that the merchandise is sold as emblems, that it has never been sold by his company as ornaments, and that it has always been sold to ecclesiastical organizations; that he did not know what his customers used the merchandise for, except that he had seen it used on church vestments at various dealers and manufacturers of church vestments; that he had also seen the merchandise used on altar cloths and ecclesiastical drapes. The witness

also testified that the letters "I. H. S." represented the words "I Have Suffered."

The second witness who testified for the plaintiff was associated with the Holy Land Art Co. since 1922 and was the principal owner thereof, which company had been and was engaged entirely in the manufacture and sale of vestments and altar hangings. He stated that his company had used thousands of pieces of merchandise like exhibit 1; that this merchandise is purchased under the description mainly of an emblem, but also under the name of medallion and vessica; that his company uses it on the back of vestments and on altars; that these vestments and altar hangings are used mostly by the Catholic Church, the Episcopal Church, and other Protestant denominations, "but they don't use I. H. S., but they use other symbols." As to the reason for using exhibit 1, the witness stated that "I would say it is traditional; that most people who go to these churches are so used to them that these emblems are part of the religious service, I would say." The witness also gave several explanations of the meaning of the letters I. H. S.

The witness further testified that he would use exhibit 1 if the letters I. H. S. were missing therefrom; that he would use a fabric or article that had letters other than I. H. S. thereon; that exhibit 1 would be put on a vestment or an altar hanging primarily for its religious symbolism; that he had never bought merchandise like exhibit 1 as an ornament; that he knew of no requirement of any religious order that exhibit 1 be used on a vestment. "I know it is not necessary to have this symbolism." When the witness was asked whether exhibit 1 had any other purpose than that of decoration or ornamentation, he answered: "No, sir"; that there are vestments and chasubles that are made up without the I. H. S.; some of them bear a cross; some of them bear a biblical picture woven on the back.

In response to a question by the court, the witness stated that on occasions he had seen articles like exhibit 1 used on other than ecclesiastical vestments, but that in all instances their use had a religious significance.

Counsel for the defendant, through its only witness, offered and there was admitted in evidence as defendant's illustrative exhibit A, pages 214 to 225, inclusive, of the current annual catalog of the Edward O'Toole Co. The witness then testified that the business of the Edward O'Toole Co. was church supplies, and that it sells throughout the United States at both retail and wholesale; that its catalog is distributed to the clergy, to religious dealers, and to religious schools and convents throughout the United States; that in addition to the use of exhibit 1 on chasubles, he had seen it used on antependia, which is the cloth that hangs below the altar from mensa to the ground; that he had also seen it used on altar covers, felt altar covers, and on the drapes in back of an altar and on banners.

The witness then testified that he had studied for 4½ years for the priesthood and stated that from his knowledge and studies of theology and his experience, he knew of absolutely no church law requiring the use of the symbol appearing on exhibit 1, and that to his knowledge it serves no other purpose than that of ornamentation and decoration; that according to his understanding of the word "symbolic," he would not regard exhibit 1 as a religious symbol, but that he would regard it as a religious emblem or a decoration; that the commonly accepted version of the letters I. H. S. appearing on exhibit 1 is "Jesus the Saviour of Mankind."

Upon this record, counsel for plaintiff contends that exhibit 1 is not within the term "ornaments" in paragraph 1529 of the Tariff Act of 1930, and counsel for defendant contends that exhibit 1 is an ornament within the meaning of that term as used in paragraph 1529, *supra*, since it serves no utilitarian or essential purpose, but is purely ornamental and decorative.

As supporting its position herein, counsel for plaintiff relies upon the Summary of Tariff Information, 1929; *Robinson-Goodman Co. (Inc.)* v. *United States*, 17 C. C. P. A. (Customs) 149, T. D. 43473; *Paramount Bead Corp.* v. *United States*, 19 C. C. P. A. (Customs) 385, T. D. 45522; and *United States* v. *Blefeld & Goodfriend*, 24 C. C. P. A. (Customs) 213, T. D. 48658.

In the Summary of Tariff Information, above referred to, it is stated that the articles covered by paragraph 1430 of the Tariff Act of 1922, the predecessor of paragraph 1529 of the Tariff Act of 1930, are used mainly in making or ornamenting women's wearing apparel, although some are used for upholstery or other purposes. In said Summary of Tariff Information also appears the following:

Ornaments include motifs or patterns, also, by Treasury decisions, artificial flowers, for attaching or appliquéing to a fabric for ornamentation.

It is to be noted that the first statement in the Summary of Tariff Information refers to *articles* covered by paragraph 1430 of the Tariff Act of 1922. Said paragraph 1430 mentions *eo nomine* some 25 different articles or items. It is, therefore, clear that the provision for ornaments might be eliminated and the articles covered by said paragraph 1430 might still be used mainly in making or ornamenting women's wearing apparel and for upholstery and other purposes.

As to the above quotation from the Summary of Tariff Information, the record herein makes it clear that exhibit 1 is a pattern for attaching or appliquéing to a fabric for ornamentation, and thus fits squarely within the above-quoted definition of an ornament. In view of the foregoing, we fail to see where the Summary of Tariff Information, relied upon by counsel for plaintiff, lends any support to its contention that the involved merchandise is not ornaments, as classified by the collector.

In the *Paramount Bead* case, *supra*, it was held by our appellate court that an article having a primary utilitarian purpose, although it may be incidentally ornamental, cannot be classified as an ornament. With this holding we are in accord, but in the instant case counsel for plaintiff has failed to establish by proper evidence that the involved exhibit 1 has any primary utilitarian purpose. Until this fact, if it be a fact, is established, the *Paramount Bead* case is of no aid to plaintiff's contention herein.

The following is quoted from the *Blefeld* case, *supra*:

Without attempting to define the exact limits and scope of the term *ornaments*, it is our view that Congress, when it employed the term in the paragraph, was concerned with bringing under it decorative ornamental articles which were designed to be attached to or superimposed upon other articles, usually textiles, for the purpose of decorating, beautifying, and ornamenting them.

In classifying the involved merchandise as ornaments, the collector is presumed to have found all the facts necessary to support his classification. This would include in this case a finding by the collector that the involved merchandise was a decorative article designed to be attached to or superimposed upon other articles for the purpose of decorating, beautifying, or ornamenting them. The contrary of this is not established by the evidence before us.

In the instant case the merchandise is primarily ornamental, and if it has any utilitarian use at all, it is merely incidental. As heretofore noted, the merchandise involved in the *Paramount Bead* case, *supra*, had primarily a utilitarian purpose or use and was only incidentally ornamental. In respect to such merchandise, our appellate court there stated:

\* \* \* In other words, we hold that an article that has a primary utilitarian purpose, although it may be incidentally ornamental, can not be classified as an ornament under the provisions of paragraph 1430. To hold otherwise would bring a multitude of other articles having utilitarian uses within the provisions of this paragraph. While this court has never expressly declared that an article having a utilitarian use, which article is incidentally ornamental, may not be classified as an ornament under said paragraph 1430 and its predecessors, it has so held in effect in the case of *United States* v. *Lines & Warne*, 5 Ct. Cust. Appls. 552, T. D. 35193.

In *N. S. Meyer, Inc.* v. *United States*, 6 Cust. Ct. 191, C. D. 459, in a syllabus by the court, it was stated as follows:

Woven fabrics in chief value of metal threads, not designed to be worn on apparel or carried on or about or attached to the person for mere personal comfort, convenience, or adornment, but are worn by a commissioned officer in the Air Corps of the United States Army because he must, because the law of the land so requires, and not to satisfy some whim or fancy of his own, are not covered by or included in any of the provisions of paragraph 1529, Tariff Act of 1930.

Under the above authorities, if it had been established that the laws or rules of the church, or the laws of the land, required that the involved merchandise be worn at or used in the services of the church,

we would feel inclined, and perhaps compelled, to hold that the merchandise represented by exhibit 1 was not classifiable as an ornament. The evidence herein, however, is that the use of the said exhibit 1 in the services of the church is entirely optional, and that there is nothing which compels its use at such services.

It may therefore be said that the articles at bar are primarily ornamental and that if they have any utilitarian use at all such use is incidental. Accordingly, the principle of the *Paramount Bead* case has no application here.

For the reasons stated and following the authorities cited, we hold that the plaintiff has failed to produce sufficient evidence to remove the involved merchandise from the classification as ornaments, as made by the collector. All claims of the plaintiff are therefore overruled. Judgment will be rendered accordingly.