(C.D. 2240)

BUNKER HILL BRICK & SUPPLY, INC., ET AL. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 8, 1961)

*Stein & Shostak* (*Marjories M. Shostak* and *S. Richard Shostak* of counsel) for the plaintiffs.

*William H. Orrick, Jr.*, Assistant Attorney General (*Sheila N. Ziff* and *Murray Sklaroff*, trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: These are protests against the collector's assessment of duty on merchandise described as broken face and rock face brick at $1.50 per thousand under paragraph 201(b) of the Tariff Act of 1930 as decorated brick. It is claimed that the merchandise is properly dutiable under said paragraph, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, at 50 cents per thousand, as brick, not specially provided for, not glazed, enameled, painted, vitrified, ornamented, or decorated in any manner.

The pertinent provisions of the tariff act and said act, as modified, are as follows:

Tariff Act of 1930—

PAR. 201. * * *

(b) All other brick, not specially provided for: Not glazed, enameled, painted, vitrified, ornamented, or decorated in any manner, $1.25 per thousand; if glazed, enameled, painted, vitrified, ornamented, or decorated in any manner, 5 per centum ad valorem, but not less than $1.50 per thousand.

Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739—

[201(b)] Brick, not specially provided for, not glazed, enameled, painted, vitrified, ornamented, or decorated in any manner____50¢ per 1000

The method of producing the brick involved herein was described by Jesus Garza Arocha, who has been a brickmaker for 7 years, made the brick covered by protest No. 58/13873 and protest No. 58/18124, and is familiar with brick manufactured by Ladrillera Coahuila, S.A., the maker of the brick covered by protest No. 58/15879. He stated that his brick is handmade and is produced by mixing clay with water, beating it, and then placing it in a mold. Such a mold was received in evidence as plaintiffs' exhibit 1. It has three compartments, each approximately 12 inches long and 7 inches wide on the inside. Each compartment is divided at the bottom by a wedge-shaped piece of

wood running lengthwise through the middle. Also at the bottom of each section are raised pieces, one diamond-shaped and the other bearing the word "Mexico." In the middle of the top of each compartment is a wedge-shaped groove. The witness stated that after the clay mixture is placed in the mold, it is pressed by hand and well planed on the top. Then, wedge-shaped sticks are placed in the grooves of the mold, dividing each compartment lengthwise. The purpose of using the sticks is to mark where the brick is going to break. The mold is then turned over on the ground and taken off. The clay mixture is in the form of three double bricks, which are left on the ground until the next day. By that time, they break in two where the sticks have been placed, due to the contraction of the clay. The sticks are then taken off and the bricks left to dry, after which they are fired in a kiln, cooled, and unloaded from the kiln.

Bricks representing the merchandise called broken face brick were received in evidence as plaintiffs' exhibit 3 and collective illustrative exhibit 4. On the bottom of each, there is indented the word "Mexico" and a diamond shape. One face has smooth portions top and bottom where the wedge-shaped sticks were placed, but the center portion where the double brick was broken is rough in texture.

The witness testified that common brick is made in the same way, except that the mold contains five compartments with four solid walls, and sticks are not used. The brick is plain square brick, $2\frac{1}{2}$ by $3\frac{1}{2}$ by 12 inches. Rock face brick is made by hitting the plain brick after it has been taken from the kiln with a special "L"-shaped hammer. A sample representative of such merchandise was received in evidence as plaintiffs' exhibit 6. One face of it has a rough appearance. According to the witness, it does not take great skill to rock face a brick, the work being done by the same employees who made the brick.

The method of manufacture employed by Ladrillera Coahuila, S.A., was described by the witness as follows: Clay is beaten in a pug mill, after which small pieces go into an extrusion machine, which has a die that allows four bricks at a time to come out. As the clay passes through the machine, pieces of metal on the wall of the die make grooves on the top and bottom of the brick to lighten its weight. Triangular pieces of steel at the top and bottom of the double brick mark where it is going to break. As the brick goes through the extrusion machine, it is separated by a piece of wire, but the parts come together again before they leave the machine. The bricks are then carried to another machine where they are cut into 12-inch lengths. The double bricks are broken in two by twisting them and are then dried and fired in the kilns.

A sample of the broken face brick made by Ladrillera Coahuila, S.A., was received in evidence as plaintiffs' exhibit 7. It is grooved

on the wide faces and has one rough face where the double brick was broken.

On cross-examination, the witness stated that the structural quality of his common brick is the same as that of his broken face and rock face brick. When broken face brick or rock face brick are used, the broken face or the rock face is exposed. Such brick is chosen by the builder because of his preference for its texture. According to the witness, in Dallas, they prefer plain brick and, in Houston, rock face brick. He said he had seen buildings made of various types of brick and that they differed in appearance upon close inspection.

At the second hearing, testimony was educed from the following witnesses: Tomas M. Rodriguez, owner of Rodriguez Pipe & Steel Co., importer and exporter of building materials, and Alberto J. De Lachica, who had been associated for a number of years with the Laredo Brick & Tile Co., which was owned by his family, called as witnesses for the plaintiffs; and Thomas J. Butler, president of Elgin Butler Brick Co., and Robert C. Brewer, president of Alamo Clay Products Co., called as witnesses for the defendant.

Mr. Rodriguez stated that all handmade brick in Mexico is called common brick; that common brick is chipped on one or two faces, but face brick does not have defects; that the best face brick is chosen for outside walls, and common brick is used for the inside of walls. In his experience, rock face and broken face brick are used on the outside of a building or residence, sometimes only on the front, sometimes on three of the outside walls, sometimes on four, and sometimes just as trimmings. On the other hand, glazed, vitrified, or colored bricks have a more limited use, as trimmings or as a front on a window or a patio. It is his understanding in the trade that the term "decorated brick" is used to refer to either colored, painted, glazed, or vitrified brick, and that it is applied only to brick which has undergone a second operation after it has been made. However, he did not think that the operation of breaking a double brick made it a decorated brick.

The witness was shown a sample of another type of brick (defendant's exhibit C) and stated that he had seen brick with such face markings and that it was called Estriado in Spanish. The markings on the exhibit consist of close parallel lines at right angles to the length of the brick. The witness said they were made by cutting the face of the brick with nails as it came out of the mold and before it was fired.

Mr. De Lachica testified that, in his understanding, a common brick is a smooth plain brick that is used mainly for backup and interior work, whereas face brick is a brick that is used generally on exposed masonry work, either inside or outside. The term "building brick" covers common brick and all types of face brick either rough texture

or "matt" face. Common and face brick are generally used throughout a building, while glazed, decorated, or ornamental units have a limited use for entrance doors, bathrooms, etc. In his opinion, broken face and rock face brick are face brick, but not decorated brick, because no additional processes of manufacture are employed.

The witness was shown defendant's illustrative exhibit F, a "matt" face brick, and stated that the markings were put on as the brick column was being extruded through the die before baking. The witness was also shown defendant's illustrative exhibit G, which he called a velour face brick. He said it was semismooth with some patterns or markings which were put on by a wire as the clay came out of the die and not after baking. In his opinion, brick, such as these exhibits, is used for exposed work as distinguished from backup brick, which is not exposed. The witness stated that he did not consider such brick to be decorated but said they were variations of face brick.

The witness Butler stated that there was quite a lot of confusion as to what might be termed common brick and face brick and that the consumer and not the producer determines how the finished product will be used. He said that, originally, the term "face brick" meant brick that was put on the exposed surface of a wall and the term "common brick" that which was used on the unexposed portion. He pointed out, however, that, in many instances where appearance is of no concern, common brick is used exclusively.

Mr. Butler stated that defendant's illustrative exhibit F is a type of scarified brick and is called a combed brick; that the combing effect is produced by a wire attached to the mouth of the die; and that scarifying can also be produced by the use of a twisted wire. He said that each method gives a different texture and that the purpose of such additional treatment is to attract the buying public and has nothing to do with the structural quality of the product. The witness considered plaintiffs' exhibit 3 a textured brick and stated that, in his view, anything that is scarified is textured, regardless of the method employed.

According to the witness, defendant's illustrative exhibit G is a type of face brick, having what is called a velour effect. In his view, a face brick is one which is to be used on an exposed area of a building. It could be smooth faced or rough textured. He said that not all face brick is decorated, but added that he does not ordinarily use the words "decorated" or "decorative," but rather the word "textured."

The witness testified further that glazed brick is used in structures on the exposed surfaces; that it is not usually used for the whole wall of a building, but only for special purposes in limited degrees.

Mr. Brewer testified that common brick is not selected for color or texture and is normally a smooth brick, whereas face brick is

selected for texture and color and is normally used on the exposed surface; and that while common brick is usually not exposed, a good amount is used today on residence work where color or texture does not make any difference, due to price. The witness explained that texture may be imparted at the die before the clay has been baked or burned, or it may be imparted after burning or firing. He pointed out that in rock face brick, the texture is made after burning.

The witness stated that glazed brick is a type of decorated brick; that he has seen entire buildings made of glazed brick; but that it is not its usual use. Most of it is used in places where brick is impervious to stain, in corridors, around entrances or windows. Mr. Brewer further testified that face brick does not have to have a texture; that his company makes a smooth-faced product; that a certain number of sides have to be perfect; and that if it is chipped to excess, it would not be suitable for face brick and would fall into the category of common brick.

While much of the evidence is concerned with the meaning of the terms, common brick and face brick, the question before the court is whether the imported merchandise, broken face and rock face brick, is classifiable as decorated brick or not. According to the record, broken face brick is produced in such a manner as to give one face a rough texture, and rock face brick is made by chipping one face. Both types are a variety of face brick and are normally used on exposed surfaces of buildings. They are textured as distinguished from smooth brick. According to the witness De Lachica, such brick is not decorated. Mr. Rodriguez stated that the term "decorated brick" means brick which has been colored, painted, vitrified, or glazed after it has been manufactured. In fact, none of the witnesses testified that the imported brick was decorated, although Mr. Butler said that the additional processes applied were for the purpose of attracting the buying public. On the other hand, the witnesses were in agreement that glazed brick was decorated brick and that it was normally used for limited purposes, chiefly as trimmings.

Plaintiffs claim that the rough texture given to the broken face and rock face brick here involved does not make such brick decorated or ornamented within the meaning of the tariff act. Defendant contends that not much fanciful fashioning is required to bring brick into the category of "decorated in any manner"; that the broken face and the rock face are the results of deliberate processes applied to obtain a certain appearance on the brick; and that, therefore, such brick is decorated.

In a recent case, *Otagiri Mercantile Co., Inc.* v. *United States*, 44 Cust. Ct. 184, C.D. 2173, we held that stone lanterns, consisting of pieces of sandstone or of granite chiseled into the various shapes necessary to form stone lanterns, were not themselves decorated, since

they had no embellishments carved or painted upon them nor had anything been added to the stones once they had been chiseled into the shapes desired. In the course of the opinion, we stated:

The general rule is that whether or not an article is "ornamented" or "decorated" is a question of fact to be determined with reference to the particular article before the court. *United States* v. *Mutual China Co. et al.*, 9 Ct. Cust. Appls. 232, T.D. 38202. It is the result produced upon the article, and not the method of production, which determines the classification. *United States* v. *Todd & Co.*, 11 Ct. Cust. Appls. 50, T.D. 38690. While it has been held that embroidering, embossing, printing, glazing, and dyeing may result in decorated articles, it has also been stated that not every minute appearance of ornamentation or decoration upon an article will make it an ornamented one. [Citing cases.]

In *United States* v. *Mutual China Co. et al.*, 9 Ct. Cust. Appls. 232, T.D. 38202, the merchandise consisted of earthenware articles having depressions, raised lines, or indented edges which were barely discernible, or crude, irregular, and infinitesimal variations produced by a mold or a stylus. The court held that such articles were not ornamented or decorated, stating (p. 234):

* * * Some thereof might be said to be fancifully fashioned, but in a degree far short of ornamentation or decoration. Certainly neither every deviated line nor undulated surface can be said to be an ornamentation or decoration, although pleasing to the eye.

*Absorbo Beer Pad Co., Inc.* v. *United States*, 30 C.C.P.A. (Customs) 24, C.A.D. 209, involved pinpricked pulpboard, the pinpricked effect being brought about by the use of a wire-mesh screen in the process of manufacture, assessed with duty as pulpboard, embossed, printed, decorated, or ornamented in any manner. The court stated (pp. 33–34):

* * * From any observation of the instant imported goods, close or casual, it does not appear to the eye of the observer that the pulpboard has been either embossed, or decorated or ornamented, in the sense in which Congress obviously employed those terms.

\* \* \* \* \* \* \*

It is clear to us that even with the alleged embellishment on the imported pulpboard, this merchandise does not "rise to the dignity of" embossed goods, and that it is not decorated or ornamented within the meaning of the terms employed by Congress. The roughened effect occasioned by the process of manufacture may be regarded by some as detracting from the appearance of the board; by others, the same effect may be regarded as adding to the attractiveness of the board. In all the circumstances of this case, we think we would not be justified in holding that the imported merchandise responds to any of the terms "embossed," "decorated," or "ornamented."

In the instant case, the roughened effect of the broken face brick was brought about in the course of manufacturing the brick itself. No additional operation was required. The rock face brick was made by the additional process of chipping the finished brick. The evi-

dence establishes that this operation required no skill whatsoever and could even be done by children. An examination of the samples of the involved merchandise discloses that they are all crudely made bricks, each having a rough texture on one of the faces. While this rough texture changes the appearance of the brick from that of a smooth brick and may be attractive to some, it is not in the form of a pattern or design or other embellishment. To the eye of the observer, such brick is not "decorated" or "ornamented" within the common meaning of those terms: To increase in beauty by the addition of something becoming or beautiful, to add grace or beauty, to embellish, to make beautiful or elegant. (Webster's New International Dictionary.)

An examination of the history of the tariff provision covering brick indicates that neither Congress nor the trade agreement negotiators intended that brick of the type involved herein should be classified as decorated. The Summary of Tariff Information, 1929, which was before Congress when the Tariff Act of 1930 was being prepared, states (p. 2233):

Common building brick are manufactured from the lowest grades of clay or shale which usually burn red in color. * * *

Face brick, as the name implies, ordinarily superior in quality to common building brick, are used principally for the exterior of buildings, and to some extent for interior work. They are used to produce many artistic or architectural effects, and particular care is given to the appearance of the exposed face of the brick.

Ornamental and enameled brick are types of face brick, more elaborate in shape, texture, and finish than the ordinary face brick. They are used for exterior and interior facings for buildings and for decorative effects.

Paragraph 201(b) of the Tariff Act of 1930 did not make a distinction between common and face brick, but assessed duty on brick, not specially provided for, at different rates depending on whether the brick was or was not glazed, enameled, painted, vitrified, ornamented, or decorated in any manner.

Effective January 1, 1939, said paragraph was modified by the trade agreement with Canada, T.D. 49752, reducing the rate of duty on brick, not glazed, enameled, painted, vitrified, ornamented, or decorated in any manner. The Digest of Trade Data issued in connection with this agreement states that there were three major types of brick included in this tariff classification: (1) Common building brick, (2) face brick, and (3) paving brick, hollow building tile, sand-lime brick, and cement-sand brick. (Vol. 2, p. 2–8.) The first two types are described as follows:

(1) Common building brick.—This type, serviceable for ordinary construction, is usually made from the lowest grades of clay or shale which fire, as a rule, to some shade of red. * * *

(2) Face brick.—Bricks of this type, whether or not possessing a special finish or texture, are used to some extent for exposed interior work, but principally for the exterior finish of buildings. They must be properly fired for durability, and particular care must be given to the finsh of the face to be exposed.

The rate of duty on brick, not glazed, enameled, painted, vitrified, ornamented, or decorated in any manner, has been further reduced by the General Agreement on Tariffs and Trade, T.D. 51802, and the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739. In the Summaries of Tariff Information, 1948, volume 2, page 12, under "BRICK, N.S.P.F. NOT GLAZED OR DECORATED," it is stated:

The types of brick dutiable under this n.s.p.f. tariff classification are virtually all brick used for structual purposes and do not include firebrick, glass brick, and glazed brick, of which imports have been negligible and domestic production relatively small. Practically all of the imports under this n.s.p.f. classification have consisted of ordinary clay building brick, known in the trade as common and face brick, which far exceed all other types of structural brick in commercial importance.

It appears, therefore, that it was well known to Congress and to the trade agreement negotiators that there were types of brick known as common brick, face brick, and ornamental or decorated brick; that face brick included brick with a special finish or texture; that it was used for the exterior finish of buildings; that particular care was given to the appearance of the exposed face of such brick; and that there were types of face brick, more elaborate in shape, texture, and finish than ordinary face brick. The distinction made in the tariff act and in the trade agreements is not between common brick and face brick but between brick, not glazed, enameled, painted, vitrified, ornamented, or decorated, and brick which has been glazed, enameled, painted, vitrified, ornamented, or decorated in any manner. In view of all the foregoing, it is evident that the latter provision was not intended to cover ordinary face brick, whether or not possessing a particular finish or texture, but was intended to cover brick which had been processed more elaborately in shape, texture, and finish than ordinary face brick. The instant merchandise, which has no more than a roughened texture on one face, falls squarely within the type of ordinary face brick described in the Summaries of Tariff Information and Digest of Trade Data, *supra*, and is not ornamented or decorated in the sense in which Congress employed those terms.

We hold, therefore, that the merchandise here involved, broken face brick and rock face brick, is properly dutiable under paragraph 201(b) of the Tariff Act of 1930, as modified, at 50 cents per thousand, as brick, not specially provided for, not glazed, enameled, painted, vitrified, ornamented, or decorated in any manner. The protests are sustained and judgment will be rendered for the plaintiffs.