(C.D. 3969)

JOVITA PEREZ *v.* UNITED STATES

United States Customs Court, Third Division

(Decided February 20, 1970)

*Stein & Shostak* (*Marjorie M. Shostak* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Andrew P. Vance, Dominick M. Minerva,* and *Herbert P. Larsen,* trial attorneys), for the defendant.

Before RICHARDSON and LANDIS, Judges

LANDIS, Judge: Plaintiff in these four cases, consolidated for trial, protests the failure of customs officials at Laredo, Texas, to approve the nondutiable status of certain American-made parts used in assembling foreign railroad boxcars which were imported from Mexico in August 1963, and classified as railway cars dutiable at 18 per centum ad valorem under paragraph 397* of the Tariff Act of 1930, as modified. That classification and duty rate are not in dispute.

The substance of plaintiff's complaint is that, in assessing duty under paragraph 397, allowance should have been made for the value of American parts, consisting of "center sills, side plates, axles, etc.", properly free of duty under paragraph 1615(a) or paragraph 1615(g) of the Tariff Act of 1930, as amended. As the case comes to us for decision, the claim under paragraph 1615(g) is abandoned along with claim as to all American parts, save only the center sills and axles claimed free of duty under paragraph 1615(a).

We eliminate here the usual considerations specified by statute and customs regulations preliminary to claim under paragraph 1615(a). See *Border Brokerage Company* v. *United States,* 59 Cust. Ct. 289, C.D. 3143 (1967). The official papers in evidence bear customs stamp that all documents, required by customs regulations to support free

---

*Paragraph 397 of the Tariff Act of 1930, as modified, provides:

Articles or wares not specially provided for, composed wholly or in chief value or iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead, tin or tinplate), partly or wholly manufactured, not plated with platinum, gold, or silver, and not colored with gold lacquer:

*   *   *   *   *   *   *

Railway cars, and parts thereof_____ 18% ad val.

entry under paragraph 1615(a), were either produced or waived. The parties have additionally stipulated that no drawback, the condition specified in 1615(e) for free entry under paragraph 1615(a), was claimed, paid and, indeed, is waived in connection with the export of the center sills and axles to Mexico.

Free entry under paragraph 1615(a) is limited to:

> Articles, the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means * * *.

The narrow question we must decide is whether, on this record, the American-made center sills and axles were advanced in value or improved in condition in Mexico before return to the United States. As a matter of law, *United States* v. *Oakville Company*, 56 CCPA 1, C.A.D. 943 (1968), we are of opinion that they were not and sustain the protests.

These center sill sections and axles are two of some twenty-odd American parts which the manufacturer invoiced as used in assembling the imported railroad cars. Customs allowed for the value of the majority of the American parts as free of duty, under paragraph 1615(a), in liquidating the entered railroad cars dutiable under paragraph 397. It disallowed the value of the center sills and axles, not because they were not American made, but because, in the opinion of customs, both items had undergone a manufacturing process in Mexico. A center sill is the part that supports the floor of the railroad car. Axles, it is well known, are part of the wheel assembly.

The only witness to testify in this case is the manager of design engineering for the manufacturer of the railroad cars. His qualifications to testify are unchallenged. The witness stated that the American part of the center sill in these protests consists of two American-made Z beams, each 613 inches long, exported from the United States to Mexico in a knockdown condition. With the aid of exhibits 1 to 8, and at greater length than we need go into, the witness described the three stages of assembling a center sill section. Quite briefly, what the manufacturer did to the Z beams in Mexico is align and burn a number of holes in the Z beams so that parts could be attached before joining the Z beams by continuous welding. After the two beams were joined, additional sub-assemblies were attached.

The axles, made in the United States, were received in Mexico rough turned. The witness testified that all that was done to the axles in Mexico was to remove about one-eighth of an inch of the rough turn on a lathe in order to smooth the axles before assembly with the wheels of the railroad car. (Exhibits 9 and 10.)

The dutiable status of articles made in the United States, exported and identified when returned to the United States as American articles used to produce a new imported commercial entity, was most recently considered by the court of appeals in *United States* v. *Oakville Company*, *supra*, decided November 14, 1968; petition for rehearing denied February 13, 1969.

The American-made articles in *Oakville* consisted of common pins one inch in length and rolls of one-inch tape exported to Canada. In Canada, the pins and paper tape were fed into an automatic machine which put two longitudinal parallel ridges in the tape and simultaneously inserted the pins through the ridges at accurately spaced intervals. Lengths of the pin-loaded tape were returned to the United States on wooden cores with a labelled cardboard disc stapled on each side. Customs classified the imported article as common pins on rolls dutiable under paragraph 350 of the 1930 Act. The court of appeals upheld the *Oakville* claim that the pins and paper should be duty free under paragraph 1615(a). The reason the appeals court held the ridged paper duty free strikes us, as a matter of law, to be equally applicable to the Z beams and axles in these protests, as follows:

> The significant fact here is that the pin-carrying paper ribbon is identifiable as having been made from the exported paper tape and as such is American goods returned, within the contemplation of paragraph 1615(a). As to the other requirement that it is not "advanced in value or improved in condition," looking at this problem from the standpoint of commercial reality, as we must, *Amity Fabrics, Inc.* v. *United States*, 43 Cust. Ct. 64, 67, C.D. 2104, and cases therein cited, it appears to us that as paper tape the exported material has actually been consumed in making another article—as were the pins—and its value as an article of commerce per se has been destroyed, not advanced. * * * [56 CCPA 1, at page 8.]

Plaintiff does not cite the *Oakville* decision, probably because the appeals court's decision had not yet come down when its brief was filed. Defendant's brief alludes to the *Oakville* decision as not particularly helpful, simply because the decision had not become final at the time defendant filed its brief. Interestingly enough, defendant goes on to ambivalently suggest:

> * * * that what is significant about that case in its present posture is the Appellate Court's recognition that the merchandise in *Oakville* was manufactured into and became a "new commercial entity", in part of American components, while in Canada. This is essentially the Government's position with regard to the merchandise at bar. The *Oakville* decision is also authority for the contention that if the Court concludes that plaintiff is entitled to relief, then it is not necessary to remand these cases to a single judge, the notations on the entries herein noting the acceptance

by the Appraiser of the entered values, as was the case in *Oakville*. [Defendant's brief, page 18.]

The *Oakville* decision, as we have noted, is now final. The significance of the decision, suggested by defendant, must not be lost here. The American Z beams and axles are also part of a new imported commercial entity, railroad cars. Customs recognized the Z beams and axles as identifiably American articles. To be sure they were processed abroad, but no more so than the ridged paper in *Oakville*. If we may paraphrase the court of appeals, it appears to us that the exported Z beams and axles have been consumed in making railroad cars and their value as articles of commerce *per se* destroyed, not advanced. We hold, therefore, that the American-made Z beams and axles are duty free under paragraph 1615(a) and, to that end, that the appraised value of the Z beams and axles are deductible from the appraised values of the railroad cars in assessing duty under paragraph 397.

The protest claim as to the Z beams and axles under paragraph 1615(a) is sustained. The claim under paragraph 1615(g), and claim as to all other items, are dismissed.

Judgment will be entered accordingly.