(C.D. 3987)

BAYLIS BROTHERS COMPANY *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 2, 1970)

*Sharretts, Paley, Carter & Blauvelt* (*Gail T. Cumins* of counsel) for the plaintiff.

*William D. Ruckelshaus,* Assistant Attorney General (*Arthur H. Steinberg* and *Velta A. Melnbrencis,* trial attorneys), for the defendant.

Before RICHARDSON and LANDIS, Judges;
LANDIS, J., concurring

RICHARDSON, Judge: The merchandise consists of dress fronts which were cut and stencilled in the United States, exported to Barbados, British West Indies, smocked and then returned to the United States. Smocking is the creation of shirrs or gathers by using thread to follow a predetermined stencilled pattern. The importations were classified under item 382.03 of the Tariff Schedules of the United States as "other women's, girls', or infants' apparel, ornamented," and assessed duty at the rate of 42.5 per centum ad valorem.

The record in the case of *The Baylis Brothers, Inc.* v. *United States,* 60 Cust. Ct. 336, C.D. 3383, 282 F. Supp. 791 (1968), affirmed 56 CCPA 115, C.A.D. 964, was incorporated into the record in this case.

The parties stipulated that:

1. The merchandise was not repaired.

2. The component parts of the dress fronts are articles of American origin.

3. The foreign shippers statement was filed as provided for in Customs Regulations 10.8(i).

4. The Owners Declaration was filed.

The plaintiff claims that:

1. The subject of the importation consists of American articles exported for alterations and returned; and as such are dutiable under item 806.20, upon the value of the processing outside the United States

or, in the alternative,

2. The merchandise is dutiable as "articles assembled abroad in whole or in part of products of the United States, which have not been advanced in value or improved in condition abroad by any means other than by an act of assembly," under item 807.00 at the full value of the imported article, less the cost of such products of the United States.

The tariff items under which plaintiff claims in the alternative are as follows:

Schedule 8, Part 1:

> Articles returned to the United States after having been exported to be advanced in value or improved in condition by any process of manufacture or other means:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

806.20      Articles exported for repairs or alterations _____    A duty upon the value of the repairs or alterations * * *

| | | | | | |
|---|---|---|---|---|---|
| * | * | * | * | * | * |

807.00      Articles assembled abroad in whole or in part of fabricated components, the product of the United States, which (a) were exported in condition ready for assembly without further fabrication, (b) have not lost their physical identity in such articles by change in form, shape, or otherwise, and (c) have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating, and painting____    A duty upon the full value of the imported article, less the cost or value of such products of the United States * * *

The government contends that the merchandise was subjected to a manufacturing operation which excludes it from the term "alterations" under item 806.20; that it is excluded from item 807.00 as there was no mere assembly but a manufacturing operation which advanced the merchandise in value or improved its condition; and that the merchandise and manufacturing process in this case are substantially the same as the merchandise and manufacturing process in the incorporated case of *Baylis Brothers, Inc., supra.*

The issue in this case is whether smocking is an "alteration" or "assembly" which makes the merchandise properly classifiable under either item 806.20 or item 807.00 of TSUS.

Plaintiff introduced into evidence exhibit 2, a sample of a dress front, cut to size and shape, after it has been stencilled according to design for its style 4596, in the condition in which it is exported to Barbados; and exhibit 3, a dress front after it has been smocked to fit into style 4596. Plaintiff also introduced in evidence exhibit 4 which is a colored photograph of dress style 4596 with a smocked front as produced by plaintiff.

There was one witness for the plaintiff, Merritt D. Baylis, who also testified in the incorporated case of *Baylis Brothers, Inc., supra.* The witness stated that by putting the thread through the stencilled holes and gathering the fabric into pleats an elasticity is produced which reduces the dress front approximately two-thirds the size it was when it was exported to Barbados. He further testified that the elasticity in the smocked dress front permits the dress to be worn by girls of slender or heavy builds, by contracting to fit the former and expanding to fit the latter. This testimony is substantially the same as that the witness offered in the case of *Baylis Brothers, Inc., supra,* in an effort to establish a claim that smocking stitches are functional and not ornamented. In that case the court compared the utility of the importation with its decorative value and reached the conclusion that the effect of beauty, adornment and stylishness produced upon the dresses by the stitching served *primarily* a decorative as opposed to a useful function. It is clear that the merchandise is substantially the same as that involved in *The Baylis Brothers, Inc.* case—it is ornamented. It is plaintiff's contention that whether smocking is or is not ornamented, it is an alteration, or in the alternative, a mere assembly. (R. 6.)

In the case of first impression on the issue here, *G. L. Ramsey a/c The Juvenile Mfg. Co., Inc.* v. *United States,* 26 Cust. Ct. 603, Reap. Dec. 7978 (1951), in which dress fronts were cut out and stencilled in the United States and ornamented from American components or smocked in Mexico, the court held that the smocking amounted to "alterations" within the meaning of the term in paragraph 1615(g)

of Title 19 of the Tariff Act of 1930, as amended. The plaintiff relies on this case in its brief. The defendant undertakes to distinguish the fact situation in the *Ramsey* case, *supra*, from that involved here by contending that in the former the parties stipulated that the dress fronts, as articles, were shipped to Mexico and returned therefrom; and that there is no such stipulation in this case. As a matter of fact in this case the parties did stipulate that "the component parts of the dress fronts are articles of American origin." (R. 10.) Neither of the parties asserts that the term "alterations" as used in item 806.20 has any different meaning than it does in paragraph 1615(g).

The most recent decision which is relevant to the issue in this case and which is controlling is *United States* v. *Oakville Company*, 56 CCPA 1, C.A.D. 943 (1968). It was decided subsequent to the filing of plaintiff's brief, but prior to the filing of defendant's brief, and defendant cites the case as supporting its position. In the *Oakville Company* case pins and paper tape were sent to Canada for machine processing and reimported as "pins-in-rolls." The court found that nothing had been done to the pins except to insert them into the paper and that the paper tape had only been modified by the creasing of two ribs. It held at page 51 (Customs Bulletin, Vol. 2, No. 49), that *no alteration* had occurred; "that what was imported was a 'different commercial entity' from what was exported from the United States," citing *United States* v. *John V. Carr & Son, Inc.*, 55 CCPA 111, C.A.D. 942 (1968). At page 52 of the *Oakville Company* case in C.A.D. 943 the court stated that "Like the pins, the paper tape was sent to Canada to become a component or element of pins-in-rolls, a new commercial entity *manufactured* in Canada. . . . [W]e do not think it [the rib creased tape] was exported 'for' *alterations*, notwithstanding it was somewhat altered in having the pins stuck into ribs formed in it. . . . The significant fact here is that the pin-carrying paper ribbon is identifiable as having been made from the exported paper tape and as such is American goods returned, within the contemplation of paragraph 1615(a)." [Emphasis added.] The court further stated that "it appears to us that as paper tape the exported material has actually been consumed in making another article—as were the pins—and its value as an article of commerce per se has been destroyed, not advanced."

The decision in the *Oakville Company* case excludes the possibility of treating the smocking on the article imported into the United States as an alteration of the article exported from the United States. This exclusion comports with section 10.8 of the Customs Regulations as amended, which provides that "alterations" means changes which do not "create a new or different article." The term "article" is construed

in its broad sense as meaning things manufactured, unmanufactured or partially manufactured. Fabrics in the piece are classified as articles. *United States* v. *A. A. Vantine & Co.*, 166 Fed. 735, 738 (1908).

Headnote 3(b) to schedule 8, part 1, subpart B, which has reference to articles assembled abroad with components produced in the United States, provides that:

> "The duty on the imported article shall be at the rate which would apply to the imported article itself, as an entirety without constructive separation of its components, in its condition as imported if it were not within the purview of this subpart. . . ."

The Tariff Classification study to Schedule 8 at page 15 states ". . . the provision [item 807.00] and its related headnote (headnote 3 to subpart B) logically assume that there has been an advancement or improvement, but limits the extent of the advancement or improvement to that which is brought about solely by the act of assembly." It is submitted that the only advancement or improvement in the two American components of the imported merchandise is that brought about solely by the act of assembly. At no time during the processing which took place in Barbados does it appear that the workers there exercised any independent judgment as to how the dress front was to be shirred or smocked. On the contrary, the workers in Barbados were required to and did follow the pre-determined stencilled design in the course of shirring or smocking which had been laid out for them in the States prior to exportation of the component to Barbados. And it is to be noted from an examination of exhibit 6 in the incorporated case that the stitching has been removed from one-half of a finished dress front—leaving component materials of dress front and thread in the same condition as when exported to Barbados.

Under the facts disclosed in this record we are of the opinion that the smocking operation in this case constitutes an assembly within the meaning of item 807.00 of the tariff schedules, and we so find. Under the authority of the decisions in the *John V. Carr & Sons, Inc.* and the *Oakville Company* cases and headnote 3(b) to schedule 8, part 1, subpart B, we hold that the imported merchandise was a new article different from its two American component materials—the stencilled dress front and the thread used in making the gathered stitches on the dress front. They have become an entirety—a "smocked dress front." And it follows, as alternatively claimed by plaintiff, that in accordance with the provisions of item 807.00 duty should be assessed herein upon the full value of the imported article less the cost or value of the American components of such article. The alternative protest claim under item 807.00, is, therefore, sustained. As to all other claims the protest is overruled.

Judgment will be entered accordingly.

Concurring Opinion

Landis, Judge: I concur in the view that the claim of plaintiff's protest that certain dress fronts originally cut and stencilled in the United States and then exported to Barbados where they were smocked and then returned to the United States, should have been liquidated under item 807.00 of TSUS as American goods returned upon the authority of *United States* v. *Oakville Company*, 56 CCPA 1, C.A.D. 943 (1968). Moreover, I believe such result is necessary in view of the recent decision of this division of the court in *Jovita Perez* v. *United States*, 64 Cust. Ct. 120, C.D. 3969 (1970), wherein we held that American-made Z beams and axles exported from the United States and later identified when returned to the United States as American articles used as parts in a new imported commercial entity, to wit, railroad boxcars, were free of duty under paragraph 1615(a), Tariff Act of 1930, as amended. See also our decision in *LeGran Manufacturing Company* v. *United States*, 59 Cust. Ct. 58, C.D. 3070 (1967), holding that pattern pieces from ladies' dresses and housecoats, labels, thread and zippers exported to Jamaica and there combined and manipulated into unfinished dresses for return to the United States were not materials "altered," dutiable only upon the value of the alteration under paragraph 1615(g)(1), Tariff Act of 1930, as amended, but were a new article of manufacture losing the identity of the articles, pattern pieces, etc., previously exported.