59 CCPA

**The UNITED STATES, Appellant,**

v.

**BAYLIS BROTHERS COMPANY,**
**Appellee.**

**Customs Appeal No. 5413.**

United States Court of Customs and Patent Appeals.

Nov. 11, 1971.

---

L. Patrick Gray, III, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Velta A. Melnbrencis, New York City, for the United States.

Sharretts, Paley, Carter & Blauvelt, New York City, attorneys of record, for appellant. Gail T. Cumins, New York City, of counsel.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

BALDWIN, Judge.

This is an appeal by the United States from the decision and judgment of the United States Customs Court, Third Division,[1] sustaining the importer's protest that certain smocked dress fronts for use in children's dresses qualify for special duty treatment under item 807.00 of the Tariff Schedules of the United States [TSUS].

The components of the merchandise involved are fabric and thread of American origin. Prior to exportation from this country, the fabric was cut into pieces of a predetermined size and shape, and a design made up of dots was stencilled on the fabric pieces. The size of the exported fabric pieces was such that when the smocking operation was completed the dress fronts would be the proper size for use in children's dresses. The cut and stencilled pieces of fabric, along with the thread, were then exported to Barbados, where the smocking operation took place. The fabric was smocked by sewing the thread through the stencilled dots to obtain gatherings of material or shirrs. After the smocking operation the completed dress fronts were imported into the United States.

Item 807.00, TSUS, provides as follows:[2]

807.00 Articles assembled abroad in whole or in part of fabricated components, the product of the United States, which (a) were exported in condition ready for assembly without further fabrication, (b) have not lost their physical identity in such articles by change in form, shape, or otherwise, and (c) have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating, and painting ................A *duty upon the full value of the imported article, less the cost or value of such products of the United States * * *.*

The Customs Court held that the smocking operation was an "assembly" within the meaning of that term as it is used in various forms in item 807.00, and that the only advancement in value of the American components of the imported merchandise was that brought about by the act of assembly. In reaching its conclusion that the smocking in this case met the requirements of an "assembly," the court noted that the workers in Barbados did not exercise any independent judgment in the smocking operation, but merely followed the dots in the stencilled design.

■ Appellant contends that the smocking operation is not an "assembly," but a manufacturing operation other than an "assembly." C. J. Tower & Sons of Buffalo, Inc. v. United States[3] is cited as authority that the word "assembly" was used in its common meaning in item 807.00. We agree with the conclusion of the Customs Court in that case that "the term is used to describe the joining or coming together of solids."[4] We find that the smocking operation is well within the common meaning of the term "assembly," since the operation merely consists in joining the two components together according to the stencilled designs.

The appellant also contends that the Customs Court erroneously looked to a partially unraveled dress front as a ba-

1. Baylis Brothers Co. v. United States, 64 (1965).

2. It is on this provision that appellee relies to avoid Headnote 2 of Schedule 8, Part 1, which states that "except as otherwise provided," products of the United States which are returned after being advanced in value, improved in condition, or assembled abroad are dutiable at their full value.

3. 62 Cust.Ct. 643, C.D. 3840 (1969).

4. *Id.,* at 647. In reaching its decision, the court considered the following definitions of the term "assemble:"

To fit or join together, as parts of a mechanism. [Funk & Wagnalls Standard Dictionary, International Edition (1963)].

to bring together: as * * * b: to fit together various parts of so as to make into an operative whole * * *. [Webster's Third New International Dictionary, 1961 Edition].

sis for its conclusion that the American components had not "lost their physical identity in such [assembled] articles by change of form, shape or otherwise."

■ It is apparent from a consideration of the legislative history of item 807.00 that the phrase "in such articles" was intended to solidify the demise of the "constructive segregation" doctrine which had developed under Paragraph 1615(a) of the Tariff Act of 1930.[5] Under that doctrine, American components assembled into articles abroad were held not to have been advanced in value if they could be identified and removed from the article without injury to themselves or to the article.[6]

■■ The legislative history makes it equally apparent, however, that Congress did not intend to exclude articles from item 807.00 merely because the American components had undergone some change of form or shape. The test specified in item 807.00 is whether the components have been changed in form, shape, or otherwise to such an extent that they have lost their *physical identity* in the assembled article. The term "physical identity" was used to exclude from item 807.00 those assembled articles whose American components are "chemical products, food ingredients, liquids, gases, powders," and the like.[7] An examination of the smocked dress fronts reveals that the thread has not lost its physical identity as thread by being sewn into the fabric, and the fabric has not lost its physical identity as fabric by being shirred. Thus, whether or not the Customs Court applied the now obsolete "constructive segregation" doctrine, the merchandise at bar meets the requirements of item 807.00, TSUS.

The judgment of the Customs Court is affirmed.

Affirmed.

5. See the Tariff Classification Study, Vol. 10, pp. 12–16 (1960) ; H.R.Rep.No.342, 89th Cong., 1st Sess. 48–49 (1965).

59 CCPA

6. See C. J. Tower & Sons v. United States, 33 Cust.Ct. 14, C.D. 1628 (1954) ; Tariff Classification Study, Vol. 10, at 14.

7. H.R.Rep.No.342, 89th Cong., 1st Sess. 49 Cust.Ct. 256, C.D. 3987 (1970).