The **FIRESTONE TIRE & RUBBER COMPANY**

v.

**UNITED STATES.**

**C.D. 4474, Court Nos. 72-5-01060 and 72-9-01969.**

United States Customs Court.
Oct. 11, 1973.

Kirkland, Ellis & Rowe, Washington, D. C. (Perry S. Patterson, Washington, D. C., of counsel), for plaintiff.

Irving Jaffe, Acting Asst. Atty. Gen. (Frank J. Desiderio, Dept. of Justice, Civil Div., Customs Section, New York City, trial attorney), for defendant.

## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

NEWMAN, Judge:

In these consolidated civil actions, the parties agree that there is no genuine issue as to any material fact, and they have filed cross-motions for summary judgment pursuant to rule 8.2.

The imported merchandise consists of so-called top and bottom domes for pre-mix sode syrup containers manufactured in the United States by a division of Firestone, and then shipped to Uniroyal, Ltd. in Montreal, Canada (Uniroyal). At Uniroyal, by the application of a rubber coating, a shock resistant quality was imparted to the domes. Thereafter, they were returned to Firestone in the United States for completion of manufacture.

Plaintiff claims that upon importation of the domes from Canada the provisions of item 806.30 of the Tariff Schedules of the United States (TSUS) were applicable. Item 806.30 reads as follows:

> 806.30 Any article of metal (except precious metal) manufactured in the United States or subjected to a process of manufacture in the United States, if exported for further processing, and if the exported article as processed outside the United States, or the article which results from the processing outside the United States, is returned to the United States for further processing. . A duty upon the value of such processing outside the United States * * *

Plaintiff asserts that the domes were subjected to "further processing" outside the United States within the meaning of item 806.30 by virtue of the rubber coating operation at Uniroyal. Thus, insists plaintiff, the entries should have been liquidated upon merely the value of the processing outside the United States, in accordance with item 806.-30, rather than upon the full appraised value of the imported articles, as liquidated by the Government.

Defendant contends that the domes were not subjected to "further processing" in Canada within the purview of item 806.30, TSUS; and that consequently, the imported articles were properly assessed with duty by the district director in accordance with their full appraised value.

The sole issue to be determined on these cross-motions is whether plaintiff's domes were subjected to "further processing" outside the United States within the meaning of item 806.30, TSUS.[1]

---

1. Hence, there is no dispute between the parties that the domes were metal articles manufactured in the United States, or that they were returned to the United States for processing, as also required by item 806.30, TSUS. Moreover, affidavits submitted by plaintiff establish those facts.

For the reasons stated hereinafter, I have concluded that the rubber coating operation at Uniroyal in Canada meets the requirement of "further processing" under item 806.30, TSUS; and that item 806.30 was applicable in the liquidation of the entries covered by these civil actions. Accordingly, plaintiff's motion for summary judgment is granted; defendant's cross-motion is denied.

As provided in rule 8.2(f), plaintiff has submitted a supporting affidavit executed by an official at Uniroyal which describes the rubber coating operation.[2] The pertinent portion of that affidavit states:

> The manufacturing process done in Canada to the stainless steel top and bottom domes for premix syrup containers of Firestone identified in paragraphs 2 and 10 of its Complaint commenced with the domes being subjected to an acid pickling process designed to alter chemically the exterior surface of the domes. Once the surface was chemically altered, two different coats of special adhesive were then applied to the domes. A measured amount of special rubber formulation in the form of a cylindrical slug was then placed with the dome in a mold within a steam heated press. The mold was closed and, under heat and pressure, the rubber and the adhesive were vulcanized in the stainless steel domes.

With this background in mind, we reach the specific legal issue involved in these actions: whether or not the words "further processing" in item 806.30 encompass the rubber coating operation at Uniroyal, as described *supra*.

Paragraph 1615(g)(2), Tariff Act of 1930, as amended, the predecessor provision to item 806.30, contained the phrase "further processing" which was construed recently by our appellate court in Intelex Systems, Inc. v. United States, 59 CCPA 138, C.A.D. 1055, 460 F.2d 1083 (1972). That case involved copper

wire and insulating paper manufactured in the United States and exported to Spain where certain operations were performed resulting in lead-covered telephone cable. Such telephone cable was then imported into the United States on cable rolls and supplied to a contractor who was installing communications equipment. The sole issue was whether the telephone cable was "returned to the United States for *further processing*" (emphasis added) within the meaning of paragraph 1615(g)(2)(B). The appellate court determined that the cable was a completed article when it was returned to the United States, and that the operations performed on the cable at the installation site by the installing contractor did not constitute "further processing" within the purview of paragraph 1615(g)(2)(B).

Respecting the construction of the words "further processing", the appellate court stated (59 CCPA at page ——, 460 F.2d at page 1085):

> We have considered the numerous cases cited by the importer and the Government which have interpreted the words "process" or "processing." While those interpretations are helpful in a general sense, we are not really concerned with the meaning of "processing" in a vacuum, in the abstract, or in other contexts unrelated to those at bar. Rather, its meaning must be controlled by the particular context in which it is used here and the legislative intent. Fleming v. Hawkeye Pearl Button Co., 113 F.2d 52, 57 (8th Cir. 1940). When we look to the context of ¶ 1615(g)(2), we do not think that Congress had in mind that any and all kinds of "processing" taking place upon return of an article to the United States would suffice to bring the article within the purview of that paragraph. Instead, we believe that the words "further processing" related to the kind of processing to which the article had been subject-

---

2. The expression "rubber coating operation" where used in this opinion refers to all of the processes performed by Uniroyal, as described in the supporting affidavit.

ed before—namely, "a process of manufacture," as expressed in ¶ 1615 (g)(2)(A). We continue of the view that Congress used "the expression 'subjected to a process of manufacture' as synonymous with 'processing'", Burstrom v. United States, 44 CCPA 27, CAD 631 (1956), and that the "further processing" referred to in P 1615(g)(2) is a further manufacturing process.

Although the sole issue decided in *Intelex* was whether the telephone cable was "returned to the United States for further processing",[3] in my view the above quoted construction by the appellate court is equally applicable to the words "further processing" as applied to the operations performed outside the United States. Therefore, the domes must have been subjected to a process of manufacture in Canada to come within the ambit of item 806.30, TSUS.

Plaintiff argues that, as shown by an affidavit, "the domes were subjected to a number of integrated manufacturing processes in Canada", viz., the rubber coating operation. I agree. It is defendant's position, however, that to come within the purview of item 806.30, TSUS, some process of manufacture comparable to machining, grinding, drilling, tapping, threading, punching, or forming must be performed on the metal itself. Defendant urges that these enumerated operations were the types of "further processing" contemplated by Congress in item 806.30, and that the rubber coating operation performed by Uniroyal in Canada was not comparable to any of the above enumerated operations.

Defendant's position is without merit. Significantly, no legislative history or other judicially recognized authority is cited by defendant which supports its highly restrictive interpretation. Moreover, if Congress had intended the meaning advocated by defendant, surely such intent would have been plainly indicated. Therefore, the provision was intended, I think, to be more comprehensive than defendant's interpretation and certainly includes the manufacturing operation performed by Uniroyal in this case.

Defendant also cites the following cases for the well established principle in customs law that the mere cleansing of an article, or "getting it by itself", is not a manufacturing process. Passaic Worsted Co. et al. v. United States, 17 CCPA 459, T.D. 43916 (1930) (cleaning of wool); Woolart Mills, Inc. v. United States, 58 Cust.Ct. 450, C.D. 3018, 269 F.Supp. 381 (1967) (silk cleaning); George Beurhaus Co. et al. v. United States, 32 Cust.Ct. 269, C.D. 1612 (1954) (removal of pumpkin seed kernels from their pods).

The foregoing decisions are inapposite here. Even granting that the acid pickling process at Uniroyal was "in the nature of a cleansing operation", as asserted by defendant,[4] the additional processes of applying a special adhesive and coat of rubber also must be considered in determining whether the domes were subjected to "further processing".

In summary, I find that there is no genuine issue of fact to be tried in this case, and that as a matter of law the articles in issue were further processed outside the United States within the purview of item 806.30, TSUS, as claimed by plaintiff. Accordingly, it is hereby

Ordered that the plaintiff's motion for summary judgment be and the same hereby is granted; and it is further

---

3. As pointed out in footnote 1, defendant does not dispute that the domes were returned to the United States for processing, as required by item 806.30, TSUS.

4. An affidavit submitted by plaintiff (quoted in part *ante*) indicates that the acid pickling process was "designed to alter chemically the exterior surface of the domes". The Government submitted no controverting affidavit. Consequently, there is no basis in fact for considering the acid pickling process used at Uniroyal to be merely a cleansing operation, as urged by defendant.

Ordered that defendant's cross-motion for summary judgment be and the same hereby is denied; and it is further

Ordered that the district director reliquidate the entries covered by these civil actions, and in so doing assess the appropriate rate of duty upon the value of the processing outside the United States, in accordance with item 806.30, TSUS.