**ZWICKER KNITTING MILLS,**
**Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 79–20.**

United States Court of Customs
and Patent Appeals.

Jan. 17, 1980.

Barnes, Richardson & Colburn, Chicago,
Ill., attorneys of record for appellant; Ste-
ven P. Sonnenberg, Chicago, Ill., of counsel.

Alice Daniel, Asst. Atty. Gen., Wash-
ington, D.C., David M. Cohen, Director, Jo-
seph I. Liebman, Atty. in Charge, Field
Office for Customs Litigation, New York,

* The Honorable James L. Watson, United States
Customs Court, sitting by designation.

City, Susan Handler-Menaham, Commercial
Litigation Branch, Hackensack, N.J., attor-
neys of record for appellee.

Before MARKEY, Chief Judge, RICH,
BALDWIN, and MILLER, Judges, and
WATSON,* Judge.

WATSON, Judge.

This is an appeal from the judgment of
the United States Customs Court, 82
Cust.Ct. 34, C.D.4786, 469 F.Supp. 727
(1979), which rejected the importer-appel-
lant's claim that it is entitled to a duty
allowance under item 807.00 of the Tariff
Schedules of the United States (TSUS) for
United States-fabricated knitted glove
shells. We affirm.

*Background*

This appeal concerns importations of
knitted gloves from Haiti. The pattern
stitching of these gloves was done on knit-
ting machines in the United States. How-
ever, since these machines could not close
the glove fingers, the glove shells, i. e., the
gloves in their open-fingered state, were
sent to Haiti for further processing. In
Haiti, the glove fingers were closed (tipped)
by hand with a sewing needle. Essentially,
this tipping operation consisted of passing a
piece of yarn through the top row of loops
left by the knitting machine, and then
stitching across the top of the finger. Af-
ter a few stay stitches, the yarn was
trimmed, and the operation was repeated
for another finger. Passing the yarn
through the top row of loops before stitch-
ing across the top of the finger was neces-
sary to lock the knitting loops, and thereby
fix the knitting so that it would not unrav-
el.[1]

The importer claims that it is entitled to
a duty allowance under TSUS item 807.00
for the United States-made glove shells.
TSUS item 807.00 provides:

1. For a more detailed description of the tipping
operation see 82 Cust.Ct. at 37–8, 469 F.Supp.
at 729–30.

Articles assembled abroad in whole or in part of fabricated components, the product of the United States, which (a) were exported in condition ready for assembly without further fabrication, (b) have not lost their physical identity in such articles by change in form, shape, or otherwise, and (c) have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating, and painting. . . . . . . . A duty upon the full value of the imported article, less the cost or value of such products of the United States (see headnote 3 of this subpart).

The Customs Court held that the importer was not entitled to a duty-free allowance for the glove shells because conditions (a) and (c) of TSUS 807.00 had not been met. The court concluded that the tipping operation was a further fabrication and not an act of assembly. Therefore, it held that the glove shells were not "exported in condition ready for assembly without further fabrication" as required by clause (a). It also determined that tipping was not an operation incidental to the assembly process. Thus, since the tipping operation advanced the value of glove shells, it held that the glove shells could not qualify as components which "have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process" as required by clause (c).

The Customs Court gave three separate bases for its conclusion that the tipping operation constituted a further fabrication and not an assembly. First, the court reasoned that tipping was an indispensible completion or finishing of the knitting process. Second, the court pointed out that the tipping operation constructed a portion of the glove that did not exist before, the fingertips. Third, the court explained that the cost of performing the tipping operation, in terms of both expense and labor, was a significant portion of the total cost of manufacturing the glove. The Customs Court cited this court's decision in Miles v.

United States, 567 F.2d 979, 65 CCPA 32 (1978) as authority for looking at the relative cost of an operation in determining whether it is a further fabrication or an assembly.

The Customs Court distinguished the case at bar from United States v. Baylis Brothers Co., 451 F.2d 643, 59 CCPA 9, C.A.D. 1026 (1971). In Baylis Brothers, this court held that smocking, i. e., drawing thread through premarked holes in a dress front to create gatherings of materials or shirrs, was an assembly since the operation merely consisted of joining together two components (a dress front and a piece of thread). The court noted that the dress fronts in Baylis Brothers differed from the glove shells here because the former were completely fabricated before smocking. Furthermore, it pointed out that no new portion of the dress front was made by smocking whereas tipping created fingertips.

On appeal, appellant-importer challenges the Customs Court determination that the tipping operation was a further fabrication rather than an act of assembly. Appellant argues that the case at bar is on all fours with Baylis Brothers. It contends that the court's conclusion that the glove shells were not completely knitted is not supported by the record. Pointing out that tipping is performed with a plain sewing needle, whereas knitting is done with knitting needles, appellant takes the position that because all that needed to be done with the knitting needles was completed in the United States, the knitting process was finished in the United States.

Appellant also disputes that the record provides a basis for comparing the cost of tipping with the total cost of the glove. Moreover, it maintains that there is no authority for relying on a relative cost factor here. In that regard, it asserts that the issue in Rudolph Miles was whether cutting holes in steel beams was incidental to the assembly process and not whether this operation itself was an act of assembly.

## OPINION

The questions presented in this appeal are: (1) Whether or not the glove shells

were "exported in condition ready for assembly without further fabrication"? and (2) Whether or not the glove shells qualify as components which "have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating, and painting"? With regard to the first question, the parties appear to agree that the requirement that a component be "ready for assembly without further fabrication" dictates that the component be finished. We, therefore, turn our attention to the question of whether or not the knitted glove shells were exported in a finished condition.

Knitting is a process wherein loops of yarn are chained together to form a fabric. This chaining process involves three stages. First, starting stitches create a first row of loops on the knitting needles. Then, pattern stitches build new loops into old loops to form the knitted article. Last of all, finishing stitches lock the last row of open loops and thereby fix the knitting so that it will not unravel.[2]

In the case at bar, only the first two of these stages were performed in the United States. As Chief Judge Re pointed out, at the outset of the tipping operation the yarn had to be passed through the last row of loops left by the knitting machine, and without this step the glove shell would unravel. Thus, the third stage of knitting, the locking of the knitting loops did not occur until after the glove shells had been sent to Haiti. Since only two of the three stages in the knitting process were performed in the United States prior to exportation, we conclude that the glove shells were unfinished when they left the United States.

We reject appellant's argument, that because all that needed to be done on knitting needles was completed in the United States, the knitting process was finished in the United States. To determine whether a step was part of the knitting process by merely looking at the implement used would create a distinction between the locking of knitting loops by binding off with a knitting needle, and the locking of knitting loops by alternative finishing stitches that require a sewing needle. We think that such a distinction would exalt form over substance, for regardless of the particular implement or the particular stitch used, the primary function of a finishing stitch is the same, that is, the finishing stitch locks the knitting loops in order to fix the knitting so that it will not unravel.

The fact that the glove shells were unfinished when they were exported from the United States distinguishes them from the dress fronts at issue in the *Baylis Brothers* case. Although at first blush both cases seem to involve a similar joinder of two subcomponents, i. e., the joinder of the glove shell and the yarn in the case at bar, and the joinder of the dress front and the thread in *Baylis Brothers*, upon more careful analysis, it becomes apparent that the former joinder is necessary to finish a subcomponent, whereas the latter involves subcomponents that are already completed.

In *Baylis Brothers*, the manufacture of the dress fronts prior to exportation was described as follows:

[D]resses are designed in plaintiff's design department. Piece goods, purchased from various sources of supply, are cut by electric cutting knives, and shipped to contracting factories for sewing.

The front section of the dresses (plaintiff's illustrative exhibit 1–A), a piece of cotton broadcloth, is cut and stenciled by laying a paper stencil over the fabric and rubbing a brush across it, thereby producing a series of dots on the fabric. These stenciled pieces, along with sewing

---

**2.** See 13 *Encyclopaedia Britannica*, "Knitting," Encyclopaedia Britannica, Chicago, Ill., at 412–14 (1970); 10 *Encyclopedia International*, "Knitting," Grolier Inc., N.Y., N.Y., at 224–26 (1972); 11 *The World Book Encyclopedia*, "Knitting," World Book—Childcraft International Inc., Chicago, Ill., at 279–80 (1978); 16 *Encyclopedia Americana*, "Knitting," Americana Corp., N.Y., N.Y., at 488–90 (International Ed.1977); 14 *Funk & Wagnalls New Encyclopedia*, "Knitting," Funk & Wagnalls Inc., N.Y., N.Y., at 423 (1972); J. Springer, *Creative Needlework*, "Knitting," Westport Corp., N.Y., at 142–5 (1974).

thread, are then shipped to the Barbados, British West Indies, for "smocking."

*Baylis Brothers, Inc. v. United States*, 60 Cust.Ct. 336, 340 C.D. 3383, 282 F.Supp. 791, 795 (1968), *aff'd*, 416 F.2d 1383, 56 CCPA 115, C.A.D. 964 (1969) (Record in earlier *Baylis Brothers* case incorporated into later *Baylis Brothers* case, *Baylis Brothers, Inc. v. United States*, 64 Cust.Ct. 256, C.D.3987 (1970), *aff'd*, 451 F.2d 643, 59 CCPA 9, C.A.D. 1026 (1971), at 64 Cust.Ct. 256).

From this description, it is clear that all essential stages in the production of the material used to make the dress fronts were performed before exportation of the dress front, unlike in the case at bar, wherein the locking of the knitting loops to fix the knitting from unraveling did not occur until after exportation. Thus, this court's holding in *Baylis Brothers* is not controlling.

Since all three conditions set forth in TSUS item 807.00 must be met for a United States-fabricated component to qualify for 807.00 treatment, we need not consider the second question presented by this appeal, i. e., whether or not the glove shells qualify as components which "have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating, and painting." Our determination that the glove shells were not "exported in condition ready for assembly without further fabrication" is a sufficient basis for affirming the Customs Court.

The judgment of the Customs Court is *affirmed*.