**MAST INDUSTRIES, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 79–4–00707.**

United States Court of International Trade.

March 6, 1981.

Mandel & Grunfeld, New York City (Steven P. Florsheim and Robert B. Silverman, New York City, at the trial and on the briefs), for plaintiff.

Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D. C., Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, New York City (Susan C. Cassell, San Diego, Cal., at the trial; Saul Davis, Pittsburgh, Pa., on the brief), for defendant.

RICHARDSON, Judge:

The merchandise in this case consists of women's pants which were exported from El Salvador in May and June of 1978, and classified in liquidation upon entry at Miami under TSUS item 382.33 as other women's apparel not ornamented at the duty rate provided for in accordance with TSUS item 807.00. In issue is the dutiability of certain United States components of the pants which were subjected to buttonholing or pocket slitting operations in El Salvador. The customs service disallowed item 807.00 treatment for the components by reason of these operations.

The importer contends that the buttonholing and pocket slitting operations are assembly operations, or, alternatively, are operations incidental to assembly, so as to entitle the components to item 807.00 treatment. Item 807.00 provides for a duty upon the full value of the imported article, less the cost of value of such products of the United States of:

Articles assembled abroad in whole or in part of fabricated components, the product of the United States, which (a) were exported in condition ready for assembly without further fabrication, (b) have not lost their physical identity in such articles by change in form, shape, or otherwise, and (c) have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating, and painting.

It is admitted in the pleadings that the imported pants are articles assembled abroad in whole or in part of fabricated components the product of the United States. All customs service regulations relating to item 807.00 have been complied with, and there is no question in the case regarding the cost or value of the United States components in the imported pants, nor the value of the slit fabric components in these pants.

Through their stipulation (R. 48), the parties have agreed that:

(i) All components utilized in the two styles of pants involved in this case—style numbers 4083 and 4086—were of United States origin.

(ii) The cost or value of the United States components for these pants, per dozen was:

Style 4083—$62.197

Style 4086—$61.443

(iii) The cost or value of the United States components of the subject pants, for which duty allowances were made under TSUS item 807.00 by Customs, per dozen, was:

Style 4083—$50.284

Style 4086—$34.083

(iv) The cost or value of the United States components of the subject pants which have buttonholes and/or pocket slits (and for which *no* duty allowances under TSUS item 807.00 were made by Customs) per dozen, was:

Style 4083—$11.913 ($62.197 less $50.284)

Style 4086—$27.36 ($61.443 less $34.083)

In the two styles of women's pants involved, styles 4083 and 4086, the fabric components were all cut to shape in the United States prior to exportation to El Salvador. Witnesses called by plaintiff testified at the trial in detail as to operations which took place in El Salvador. From the witnesses it was brought out that in El Salvador the fabric components [corduroy] were sewn together, after which buttonholes were placed in one or more of the waistbands, pocket flaps, suspenders or fly fronts on both styles of pants, and pocket slits were made. When finished style 4083 was held up by three buttons on the fly front and two strips tied across the top. Style 4086 had a zipper on the fly front with two buttons at the top, and suspenders.

The buttonholing and pocket slitting operations were described by plaintiff's production manager, Salvatore Fasciana. With respect to the buttonholing operation, Mr. Fasciana testified that the buttonholes were made with a Reece S–2 buttonholing machine. He said the fabric is clamped onto the "flatbed" surface of the machine by depressing a foot pedal partway. He stated that when the pedal is completely depressed the stitching for the buttonhole is made, and then, a knife comes down and slits the fabric between the stitching for the buttonhole opening—the machine cycle time for the operation taking 2.5 hundredths of a minute [1.5 seconds].

With respect to the rear pocket slitting operation Mr. Fasciana explained as follows: The pocket is made up of precut fabric components consisting of facing, welt, pelon-type interlining, and front and back pocketing. First, the lower edges of the welt and facing are overlocked to prevent fraying and are sewn to the respective pocketing pieces. The location of the pocket is marked on the rear quarter panel pant leg.. The welt and facing subassemblies are placed on either side of the marking on the outer side of the rear quarter panel. A Singer 112W140 sewing machine is then used to simultaneously sew the facing and welt onto the outer side of the rear quarter panel and cut a slit [pocket opening] into the rear quarter panel between the facing and welt pieces. Two small diagonal cuts are then made on either side of the pocket opening. The welt and facing subassemblies are then turned [pushed] through the pocket opening to the inner side of the rear quarter panel.

The welt and facing seams are then "top stitched" with a double needle sewing machine. The ends of the pocket opening are "bar tacked", and, on style 4086, a buttonhole is made. The welt and facing subassemblies are then turned through the pocket opening to the outer side of the rear quarter panel once again. The pocket bag is then formed by sewing the pocketing pieces together. The bag is then turned through the pocket opening again, and the stitching of the pocket bag completed. On style 4083 the pocket closure loop is inserted during the sewing operation with the Singer 112W140 machine.

Enrique Siman, owner and manager of the El Salvadoran factories where the pants were put together, testified that 35 or 40 operations, depending upon which style of pants is involved, were required to put together the imported pants. He stated that 70 employees did the work, one of whom operated the buttonhole machine and another did the rear pocket slitting. According to the witness approximately 35 minutes was required to complete a pair of pants, of which 8 to 10 seconds were con-

sumed in the buttonholing operation while 15 to 20 seconds were consumed in the rear pocket slitting operation.

Mr. Siman said that the labor cost for the buttonholing operation was ¾ centavos [0.0075 colones] each, and 2.5 centavos [0.025 colones] each for pocket slitting, as against a total labor cost of 1.36 colones for the style 4083 pants and 1.40 colones for the style 4086 pants which took a little longer to finish.

Dorothy Moulla, a designer in plaintiff's employ, testified that she designed the imported pants and instructed the workers in El Salvador as to how the pants should be put together. She stated that the workers were not permitted to vary from the specifications for the buttonholing and pocket slitting operations. The witness said that the buttonholes were a closing device to join two parts of the garment together. She said that the pocket slits served two purposes, (1) to permit completion of the pocket stitching since the pocket components must be "turned through" the slit to complete the sewing, and (2) to provide an opening for the pocket once it is completed.

John Ogden, plaintiff's administrative office manager and pants program coordinator, testified that all components for the pants, i. e., cut fabrics, trim such as elastic, buttons, and thread, were shipped to El Salvador at the same time.

Testimony introduced into the record on defendant's behalf from witnesses with extensive backgrounds in the ladies garment industry was to the effect that buttonholing and pocket slitting operations such as those described by witnesses called on plaintiff's behalf are regarded in the industry as *manufacturing* operations, and not as *assembly* operations.

Plaintiff argues that the making of buttonholes and pocket slits in the fabric pieces in El Salvador did not constitute "further fabrication", and that such operations were operations "incidental" to assembly of the components. Defendant argues to the contrary.

The court agrees with plaintiff. In the court's opinion, buttonholing and pocket slitting the precut fabric pieces at bar in the manner testified to constitute no more than the performance of operations incidental to the assembly of the various cut pieces into the two styles of women's pants here involved. The removal of unwanted material, or as in this case, the *separation* of such material from fabricated precut stock, is within the range of operations permitted during assembly of an article seeking to qualify for item 807.00 treatment upon entry. *Rudolph Miles v. United States*, 65 CCPA 32, C.A.D. 1202, 567 F.2d 979 (1978). In the *Miles* case the merchandise was "Z-beams" of United States manufacture which were incorporated into the assembly of railway boxcars in Mexico. Item 807.00 treatment for the "Z-beams" had been rejected by the lower court in sustaining the customs service' determination that the burning of holes and slots in the beams during their conversion into floating center skills constituted "further fabrication" of the beams. In reversing, the Court of Customs and Patent Appeals said (p. 37), " . . . burning the slots and holes . . . in 55' steel Z-beams to permit their assembly is not such substantial change as constitutes further fabrication. Rather, the processing in Mexico was merely part of the assembly of the Z-beams into center sills and 'incidental to the assembly process' as provided in item 807.00(c)."

The court is unable to distinguish the instant case in principle from the *Miles* case. There is no question in the court's mind but that slitting the fabric for buttonholing and pocket insertion purposes were relatively minor procedures, as was the preliminary remedial sewing in the buttonhole area. And the fact that these operations were accomplished by machines is of no moment in the overall assessment of their significance. In *Rudolph Miles v. United States, supra*, the object of burning holes and slots in beams with an acetylene torch was similar to the object of making buttonholes and pocket slits in ladies pants with machines. Moreover, on the circumstances detailed in this record it would appear that

a judicious regard for proper alignment of the affected areas in the garments dictated the deferral of these minor operations until *assembly* of the garments rather than at some prior time. Said operations were not such substantial changes as to constitute further fabrication. No new portion of the pants was made, and the cost of performing these operations, in terms of both labor and expense was a small portion of the total cost of assembly.

Defendant argues that because button-holes and slash pockets possess utility to the seller and consumer of the pants independent of the assembly operations the processing of the garment to achieve these utilitarian goals constitutes an *indicia* of "further fabrication". The court does not see how the ultimate use of the garment has any bearing on the application of the statutory criteria. Buttonholes and slash pockets were an integral part of the design concept of the imported pants from the outset. And the attainment of that object was merely an incident of the *assemblage* of the various component parts—the only significant work remaining to be done when the components were exported to El Salvador. Indeed, defendant itself correctly observed this correlation of the various aspects of the assembly process when it called attention in its brief [p. 62] to the legislative history of item 807.00 wherein Congress acknowledged that the "remov[al] [of] small amounts of excess material" came within the scope of operations incidental to assembly even if they result in an advance in value of the United States components. H.R.Rep. No. 342, 89th Cong., 1st Sess., pp. 48, 49 (1965).

The case of *Zwicker Knitting Mills v. United States*, 67 CCPA ——, C.A.D. 1240, 613 F.2d 295 (1980) on which defendant relies does not compel a different conclusion. *Zwicker* involved a fingertipping operation *performed abroad on glove shells* exported from the United States minus the fingertips. And, unlike the situation at bar which involved only a *separation* or *removal* for an opening in fabricated material, the *Zwicker* operation involved an *addition* of material to close the fingertips. It was this *addition* of material which influenced the courts in *Zwicker* to find that the tipping operation constituted a "further fabrication" of the gloves which is proscribed by item 807.00(a).

The court finds that plaintiff is entitled to the allowances accorded under item 807.-00, for operations incidental to assembly, and so holds. Judgment will be entered herein accordingly.