SIGMA INSTRUMENTS, INC., Appellee,

v.

The UNITED STATES, Appellant.

Appeal No. 83–1028.

United States Court of Appeals,
Federal Circuit.

Dec. 21, 1983.

Saul Davis, New York City, argued for appellant; with him on brief, were J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Washington, D.C., and Joseph I. Liebman, Intern. Trade Field Office, New York City.

S. Richard Shostak, Los Angeles, Cal., argued for appellee.

Before MARKEY, Chief Judge, and DAVIS and BENNETT, Circuit Judges.

MARKEY, Chief Judge.

Appeal from a judgment of the Court of International Trade (CIT) holding Sigma Instruments, Inc. (Sigma) entitled to the duty allowance prescribed by item 807.00 of

the Tariff Schedules of ·the United States (TSUS)[1] for certain terminal pins (terminals). We *affirm.*

### Background

The facts are fully set forth in an opinion accompanying the judgment appealed from. *Sigma Instruments, Inc. v. United States,* 565 F.Supp. 1036 (C.I.T.1983). Essentially, Sigma claimed duty allowance only for terminals. The terminals were shipped from the U.S. to Mexico where they were incorporated into header assemblies (headers) by a transfer molding process in which the terminals were aligned with slots in the lower half of a mold and a viscous molding compound was forced into the mold cavity. The molding compound hardened to retain the terminals in the desired spaced relationship. Some headers are incorporated in relays, and the headers and relays are imported into the United States.

### Issue

Whether the CIT correctly determined that the terminals were not advanced in value other than by "assembly" within the meaning of 807.00 TSUS.

### OPINION

Because no error appears, we affirm the appealed judgment on the basis of the opinion filed by Judge Newman.

The following responds to the arguments presented by the government on appeal.

In ·an effort to show error, the government argues: (1) the meaning of "assembly" as joining of solids should control, absent proof of contrary congressional intent; (2) legislative history and administrative regulation mandate that definition; (3) the decisions of the Court of Customs and Patent Appeals (CCPA) mandate that definition; (4) otherwise painting, clearly incidental to assembly under item 807.00, would be "assembly"; (5) the headers and relays are new and different articles; (6) absent its definition, *Firestone Tire & Rubber Co. v. United States,* 364 F.Supp. 1394 (Cust.Ct. 1973), would render item 807.00 superfluous; (7) there is no assembly because the molding compound does not adhesively join the terminals to each other; (8) transfer molding is not incidental to assembly; and (9) formation of the header is further fabrication of the terminals.

#### (1)

The government's first and basic argument is adequately addressed in Judge Newman's opinion. Although an "assembly" does involve the joining or coming together of solids, *see e.g., E. Dillingham, Inc. v. United States,* 470 F.2d 629, 633 (C.C.P.A.1972); *United States v. Balis Bros.,* 451 F.2d 643, 645 (C.C.P.A.1971), nothing in the statute requires that whether a component is a solid be determined as of the instant of initial contact. *See e.g., C.J. Tower & Sons of Buffalo v. United States,* 304 F.Supp. 1187 (Cust.Ct.1969). The government concedes an "assembly" would occur if the headers were premolded with slots and the terminals were inserted into the slots. That Sigma achieves the same result more directly does not warrant denial of item 807.00 treatment.

#### (2)

The legislative history relied on is:

Thus, item 807.00 would apply with respect to components of types which are designed to be fitted together with other components *and would not apply to chemical products, food ingredients, liquids, gases, powders, etc.* (emphasis added). H.R.Rep. No. 342, 89th Cong., 1st Sess., 48–49.

The emphasized language identifies when item 807.00 does not apply, i.e., when the

---

1. Item 807.00 TSUS provides:

   Articles assembled abroad in whole or in part of fabricated components, the product of the United States, which (a) were exported in condition ready for assembly without further fabrication, (b) have not lost their physical identity in such articles by change in form, shape, or otherwise, and (c) have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating, and painting. . . . . A duty upon the full value of the imported article, less the cost or value of such products of the United States (see headnote 3 of this subpart)

American component is a chemical product, food ingredient, etc. It does not restrict the nature of foreign made components of an assembly and provides no basis for reversal here. *See Tower, supra.*

The administrative regulation cited is 19 CFR § 10.16:

> The assembly operations performed abroad may consist of any method used to join or fit together solid components such as welding, soldering, riveting, force fitting, gluing, laminating, sewing or use of fasteners ... The mixing or combining of liquids, gases, chemicals, food ingredients and amorphous solids with each other or with solid components is not regarded as assembly.

Like the statute, that regulation does not require that whether a component is a solid be determined as of the instant of initial contact.

(3)

The decision in *J.E. Bernard & Co., Inc. v. United States,* 57 C.C.P.A. 52, 420 F.2d 1403 (1970), involving a different statute, is distinguishable as explained in the opinion accompanying the appealed judgment.

Similarly, in *Texas Instruments, Inc. v. United States,* 681 F.2d 778 (C.C.P.A.1982), the issue involved duty-free entry pursuant to the Generalized System of Preferences, 19 U.S.C. § 2461 *et seq.,* not item 807.00. Moreover, the molding process there was one of many steps performed on silicon slices, each with integrated circuits (ICs), including scribing and breaking, mounting the ICs, connecting lead wires, molding, trimming, and severing. These fact differences are so great as to preclude a view of *Texas Instruments* as requiring that the present process not be held an "assembly".

(4)

The argument that because paint is initially liquid but becomes solid, and because item 807.00 makes painting incidental to assembly, every assembly process which begins with a liquid component and ends with solids must be outside item 807.00 overlooks the differences between the present process and painting. Painting is the act of laying on, or adorning with, paints or colors.

*Webster's New International Dictionary,* second edition, 1956. That is not true here. Further, painting the terminals would not result in holding them in the desired spaced relationship as does the present process.

(5)

Item 807.00 does not forbid incorporation into new and different articles of commerce. What is precluded is loss by the terminals of their physical identity. The government concedes that has not happened here.

(6)

*Firestone, supra,* involved a different statutory provision and a different process, as explained in the opinion accompanying the judgment appealed from.

(7)(8)(9)

Our conclusion that the present process constitutes "assembly" under item 807.00 is not precluded by the circumstance that the terminals are not in physical contact with each other, but are held in pre-designed spacial relationship with each other. In light of our conclusion, also, we need not reach the arguments that molding is not incidental to assembly and that incorporation of the header into a relay makes formation of the header a fabrication of the terminals.

AFFIRMED.