CARTER FOOTWEAR, PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 85–6–00796

Before TSOUCALAS, *Judge.*

---

[4] Schedule 4, Part 10 (TSUSA 1972) provides:

| | Rates of Duty | |
|---|---|---|
| | 1 | 2 |
| Crude petroleum (including reconstituted crude petroleum); topped crude petroleum; crude shale oil; and distillate and residual fuel oils (including blended fuel oils) derived from petroleum, shale, or both, with or without additives: * * *. | | |
| 475.10 Testing 25 degrees A.P.I. or more .................................. | 0.25¢ per gal. | 0.5¢ per gal. |

Memorandum Opinion and Order

(Decided September 19, 1986)

*Siegel, Mandell and Davidson, P.C. (Stephen M. Zelman),* for the plaintiff.

*Richard K. Willard,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Department of Justice *(Susan Handler-Menahem),* for the defendant.

Tsoucalas, *Judge:* Plaintiff brings this action challenging the refusal of the Customs Service to allow duty free treatment under item 807.00, TSUS, for certain parts of shoe uppers. The imported merchandise includes textile vamps, precut in the United States and exported to the Dominican Republic for assembly, where a layer of plastic was applied to the vamp. Customs classified the merchandise under item 386.50, TSUS, and liquidated the merchandise at 10.5 percent *ad valorem.* Plaintiff contests this classification alleging that the vamps qualify as American goods returned and are entitled to be entered duty free under item 807.00, TSUS. Defendant argues that the vamps are further fabricated by the application of this plastic and thus, this is not an assembly process or one incidental to assembly.

Pursuant to USCIT R. 56 plaintiff has moved for summary judgment. Defendant opposes that motion claiming that there are genuine material issues of fact in dispute but also cross moves for summary judgment.

## Background

Plaintiff manufactures footwear containing fabric uppers and thermoplastic soles. The vamps comprise the front portion of the footwear. The vamp is precut in the United States and shipped to the Dominican Republic with other textile components as well as the bindings, threads, eyelets, and plastic material to create the complete shoe uppers. At the plaintiff's plant in the Dominican Republic, plastic material is heated by machine until it reaches a molten state. A layer of this plastic formed in a halfmoon shape is deposited on the vamp. The purpose is to form a reinforced plastic toe box area. The vamp is then assembled by the attachment of eyelets, thread, and bindings, and is then sewn to other textile components. The complete shoe uppers were then imported back to the United States. Defendant denies that this reinforcement process is commonly utilized in the industry in assembling footwear uppers and denies that it is regarded as an assembly process in that industry.

The initial question presented to this court is whether the application of the plastic to the textile vamp is an assembly of solids and not a further fabrication. If this process is not an assembly, then the second inquiry is whether the application of the plastic is incidental to the assembly of the shoe uppers.

Plaintiff claims that the vamp, of United States origin, is a fully fabricated component in its condition as exported. It is plaintiff's position that the application of the plastic is an assembly of solids within the purview of item 807.00 because the thermoplastic is applied in a controlled operation set down in a uniform shape and thickness. It is argued that this is not a further fabrication because the plastic quickly solidifies.

Defendant claims that this process merely coats the vamp with the plastic which actually becomes intermixed with the textile thereby advancing the condition of the vamp. Further, defendant raises several issues apparently not sufficiently addressed by plaintiff as to the cost, time and labor involved in the process: whether the material is applied in uniform thickness; whether there was an intermixing of the liquid and textile fabric; and, questions the necessity of this operation.

## DISCUSSION

On a motion for summary judgment the court cannot try issues of fact, *Yamaha International Corp.* v. *United States*, 3 CIT 108, 109 (1982), the court merely determines the existence or nonexistence of any factual dispute material to resolution of the action. *Bushie* v. *Stenocord Corp.*, 460 F.2d 116, 118–119 (9th Cir. 1972); *Standard Commodities Import and Export Corp.* v. *United States*, 9 CIT 609, Slip Op. 85–124 at 4 (Dec. 5, 1985). All ambiguities should be resolved and all reasonable inferences should be drawn in favor of the party opposing summary judgment. *United States* v. *Diebold, Inc.*, 369 U.S. 654, 655 (1962); *S.S. Kresge Co.* v. *United States*, 77 Cust. Ct. 154, 157, C.R.D. 76–6 (1976). If the party opposing summary judgment raises any triable issues of fact then he is not forced to rely on the affidavits submitted with his opposing motion; rather, he has the right to present live expert testimony and cross examine the opponent's witnesses. *United States* v. *J.B. Williams Company, Inc.*, 498 F.2d 414, 430, n. 19 (2d Cir. 1974); *S.S. Kresge Co.* v. *United States*, 77 Cust. Ct. at 157. Based on the pleadings and affidavits submitted, this Court must agree with the defendant that material issues of fact are in dispute and therefore summary judgment is not appropriate.

Item 807.00 exempts from duty the cost or value of certain American goods returned, as provided:

Articles assembled abroad in whole or in part of fabricated components, the product of the United States, which (a) were exported in condition ready for assembly without further fabrication, (b) have not lost their physical identity in such arti-

cles by change in form, shape, or otherwise, and (c) have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating, and painting * * *.

A duty upon the full value of the imported article, less the cost or value of such products of the United States (see headnote 3 of this subpart)

It is well established that the term assembly in item 807.00 contemplates the joinder of solids. *United States* v. *Baylis Bros. Co.*, 59 CCPA 9, 11, C.A.D. 1026, 451 F.2d 643, 645 (1971), *E. Dillingham, Inc.* v. *United States,* 60 CCPA 39, 43, C.A.D. 1078, 470 F.2d 629, 633 (1972). A material may initially be a liquid and be transformed into a solid, enabling it to be assembled with another component. *Sigma Instruments, Inc.* v. *United States,* 5 CIT 90, 565 F. Supp. 1036 (1983), aff'd. 724 F.2d 930 (Fed. Cir. 1983). However, there must be no intermixing of the components. *C.J. Tower & Sons of Buffalo, Inc.* v. *United States,* 62 Cust. Ct. 643, 646, C.D. 3840, 304 F. Supp. 1187, 1189 (1969).

Defendant's affiant, George Walter, Assistant Laboratory Director at Customs in New York, states that, unlike *Tower,* the plastic has become intermixed with the textile fibers. Apparent is a question of fact as to whether the machine actually produces a layer of plastic of uniform thickness. In the context of this case it is decisive whether the plastic is not of uniform thickness because it has intermixed with the textile vamp.

Furthermore, there are questions of fact as to whether this operation was a further fabrication of the textile fabric or was incidental to the assembly process, based on the criteria set forth in *Rudolph Miles* v. *United States,* 65 CCPA 32, 36, C.A.D. 1202, 567 F.2d 979, 982 (1978), and *Mast Industries, Inc.* v. *United States,* 1 CIT 188, 515 F. Supp. 43 (1981), *aff'd.* 69 CCPA 47, 668 F.2d 501 (1981). There are issues in dispute as to: the cost of the plastic application relative to the cost of the vamp; the time required to apply the toe reinforcement relative to the time required to assemble the complete upper; the necessity of reinforcing the toe area; and, how closely related this procedure was to the assembly of the entire footwear upper.

CONCLUSION

In light of the above, this Court has concluded that summary judgment cannot be granted since there are genuine issues of material facts to be determined. Therefore, both plaintiff's motion and defendant's motion are denied.